SAN ANTONIO STREET RAILWAY COMPANY V. THE STATE OF TEXAS EX REL. HENRY ELMENDORF.

Decided March 29, 1897.

1. Street Railway—Abandonment—Mandamus to Compel Operation.

Permission being granted an incorporated company, by ordinance of a city, to construct and operate a line of street railway, its acceptance, by constructing the line, of such mere permission to do so, does not impose upon it such an undertaking to continue to operate the entire line so built as the State can enforce by mandamus. (Pp. 522 to 528.)

2. Same—Forfeiture.

The company's abandonment of the operation of a part of a branch line so constructed might, it seems, be ground for forfeiting its franchise as to the entire branch. (P. 528.)

3. Same—Cases Reviewed.

Railway v. The Queen, 1 Ell. & Bl., 858; Minnesota v. Railway, 18 Minn., 40; State v. Railway, 29 Conn., 538; City v. Railway, 51 Kan., 609; People v. Railway, 24 N. Y., 261; explained and criticised. (Pp. 524 to 526.)

ERROR to Court of Civil Appeals, Fourth District, in an appeal from Bexar.

Action by the State, on relation of Elmendorf and others, for writ of mandamus to compel the street railway company to resume operation of a portion of its line, which it had abandoned. Plaintiff obtained the writ sought. Defendant appealed, and, on the judgment being affirmed by the Court of Civil Appeals, obtained writ of error. On a former trial exceptions to the petition were sustained, and this ruling was, on appeal by the State, reversed by the Court of Civil Appeals. (30 S. W. Rep., 266.) The petition then contained an allegation of a contract between the company and individual suburban residents, concerning the operation of the line.

*Houston Bros.*, for plaintiff in error.—The court erred in overruling and in not sustaining the special exceptions of defendant to the first amended original petition of plaintiffs, and to the petition of intervention of the city of San Antonio, because:

First: Said pleadings do not allege any requirement of law contained either in the charter of defendant, or in the statutes of the State, or in the ordinances of the city of San Antonio which plaintiffs will have the court enforce, or which the court could enforce by writ of mandamus, and, on the contrary, it clearly appears from the face of said pleadings that the franchises granted by the State and by the city of San Antonio to the defendant, and especially that franchise for the operation of the line of road of this defendant in question here, was only the granting of a privilege to this defendant which it could lawfully at any time abandon in whole or in part, but which imposed no definite or defined legal duty upon this defendant such as is sought in this case by mandamus to compel it to perform.

Second: No public duty is alleged, and no duty imposed by law is alleged in said pleadings, and no allegation of fact showing no adequate remedy at law, and no statement is made of any definite duty imposed by law that could enable the same to be stated in the writ of mandamus, and, on the contrary, the court, under the pleading, would be compelled to assume the burden of, from time to time, determining in its discretion and directing as to what is the proper and usual manner for the operation of said line of street railway and thereby take the place of the proper officers of the corporation, who, in themselves, are vested with the business discretion of determining what is the usual and proper manner for the operation of a line of street railway under their control, and what the business demands of the public require in said operation, as well as the expense to be incurred by the corporation in such operation.

Third: Said pleadings, upon their face, show that plaintiffs and intervener here have mistaken their remedy and could be entitled to no other remedy, if the allegations of said pleadings be true, save and except an action for the forfeiture of the franchise in question, and such relief as might be incident thereto.

Printing Co. v. Commonwealth, 114 Pa. St., 592; State v. St. Ry. Co., 30 S. W. Rep., 266; 14 Am. & Eng. Encycl., Law, 212, 215, 216, 221; McKenzie v. Ruth, 22 Ohio St., 371; Kemerer v. State, 7 Neb., 130; Chance v. Temple, 1 Iowa, 179; Fisher v. Charlestown, 17 W. Va., 595; Daniels v. Miller, 8 Col., 542; Lavalle v. Soucy, 96 Ill., 467; · State v. Sheridan, 43 N. J. Law, 82; Schwanbeck v. People, 15 Col., 64.

*R. B. Minor, A. Lewy* and *Clark, Summelin & Fuller,* for defendants in error.—A private corporation chartered by special act as a common carrier, which, while acting under said charter, applies for and obtains a franchise from a city to construct, maintain and operate a line of street railway along the streets thereof during its chartered existence,

thereby acquires contract rights against and assumes obligations to the public which are mutually binding, and said private corporation thereby assumes a liability and a duty to the public imposed by law for its pro- . tection.

The charter from the State and the franchise granted by the city when accepted became a contract, the obligations of which neither party can repudiate without the consent of the other. The obligation assumed by the street railway company was to construct and operate a street railway between the termini named for the term of its chartered existence. On the other hand the obligation assumed by the State and city, or rather by the public, through the acts of their constituted agents, was that it would not prevent the construction and operation of its road by said company, including a reasonable use of the streets, which can only be used for a public purpose, and also including a right to collect reasonable charges from the public for carrying its passengers.

If this was a mere private contract either party would have the right to enforce its conditions by suit for specific performance or for damage for failure to comply, but, as in this case, where the contract is by a private corporation, with quasi public powers, made with the public, for the performance of a public duty which became a duty imposed by law, the public, being really the interested party, can not maintain an ordinary suit for specific performance, or for damages for failure to perform. The rights of the public could not be estimated by dollars and cents; if so, the same could not be divided. Having no other adequate remedy, the law has provided the remedy by mandamus, which operates in the nature of specific performance, in order to prevent a failure of justice. Mayor v. Houston Street Ry. Co., 83 Texas, 555; Elliott, Roads and Streets, 564, 565, 572, 583; State v. St. Ry. Co., 30 S. W. Rep., 266; Reagan v. Farmers Loan & Trust Co., 154 U. S., 393; Amended sec. 8, art. 5, State Constitution, found in Acts 1891, p. 200; High's Extraordinary Legal Remedies, 4, (sec. 1) 227, (sec. 288), 244, (secs. 315-322), 339, (sec. 430 et seq.); People v. Railway, 24 N. Y., 261; 2 Morawetz on Corporations, secs. 1116, 1128; People v. Railway, 22 N. E. Rep., 860; State v. Railway, 67 Am. Dec., 551; Elliott Roads and Streets, 32, 33; Canal Co. v. Shuman, 17 S. E. Rep., 937; 6 Thompson on Corporations, sec. 7828.

GAINES, CHIEF JUSTICE.—This case arose by a petition filed in the name of the State of Texas upon the relation of Henry Elmendorf and others to compel the plaintiff in error to operate a part of its lines, upon which it had ceased to run its cars. Demurrers to the petition were overruled, and exceptions to the answer of respondent were sustained, and thereupon the peremptory writ was awarded as prayed for in the petition. This judgment was affirmed upon appeal, and to the judgment of affirmance this writ of error has been granted.

The first question is: Did the facts alleged authorize the relief prayed for in the petition? It was alleged, that the respondent company was a

corporation, chartered by a special act of the Legislature passed May 2, 1874, and authorized to operate street railways in the City of San Antonio for the term of fifty years; that it applied to the City Council of the city for authority to construct certain lines within the city limits and that the privilege was granted by an ordinance, which is copied in the petition.   So much of it as bears upon the questions presented reads as follows:

"Section 1.   That the privilege be and is hereby granted to the San Antonio Street Railway Company to construct and operate a street railway, with all its necessary tracks, side tracks, switches, turnouts, curves, turntables, etc., and that the rights, privileges and franchises are hereby granted to the said railway company for and during the term of their charter, upon the following additional streets and avenues, to-wit:   Beginning at the end of its present tracks on West Commerce street, thence west over and along West Commerce street to Seventeenth street, thence north over and along Seventeenth street to Zavalla street, thence over and along Zavalla street into the property known as Lake View, thence north on West Nineteenth street to Woodbury avenue, thence along Woodbury avenue to West Belknap street, thence along West Belknap street to Highland Park.   Also: From West Commerce street at its intersection with Zalzamoras street, south over and along Zalzamoras street to San Fernando street, thence east over and along San Fernando street to South Laredo street, thence north over and along South Laredo street to Dolorosa street.   Also: Upon and over Myrtle street from South Flores street to San Pedro avenue.

"Section 2.   That said company may use in the construction and maintenance of said road what is known as 'T' rail.

"Section 3.   That said company is hereby required to observe all existing ordinances of the City of San Antonio not inconsistent with the rights herein granted."

It is not expressly averred, that at the time the ordinance was passed, the company had already constructed and had in operation a line or lines of street railway in the city; but we think, that this is to be inferred from Section 1, which speaks of the streets over which the privilege to construct and operate was thereby granted as "additional streets and avenues."   It was further averred, that the company had constructed and for a time had operated the line from its beginning point to Highland Park, but that while it had continued to operate that portion of that line nearest the city, it had abandoned the operation of a part.   The prayer was for a writ of mandamus to compel the respondent to operate that entire line.

It is a well settled doctrine that a corporation may be compelled by the writ of mandamus to perform a duty imposed by statute.   The duty need not be express; it may be implied.   Clearly, when it appears by fair implication from the terms of its charter, it is as imperative as if the obligation were expressed.   But as to corporations quasi-public in character, such for example as those chartered for the carriage of passengers

and freight, there are decisions which hold that they owe certain duties to the public which they may be compelled to perform, although not enjoined by their charters, either in express terms or by specific implication. But we have been unable to discover that any well defined rule has been laid down by the authorities by which we may determine in every case what implied duties are assumed by such a corporation by the acceptance of its charter. It has been held that, in the absence of some direct statutory requirement, a railroad company cannot be compelled to establish and maintain a station at a particular point on its line, although it may be shown that the convenience of the public demands it. Northern Pacific Ry. Co. v. Washington, 142 U. S., 492; People v. Railway, 104 N. Y., 58. A contrary doctrine seems to have been acted upon in State v. Railway, 17 Neb., 647, and in People v. Railway, 130 Ill., 175. It is one thing to hold that a company, which has accepted a charter authorizing it to construct a line of railroad, with power to condemn property, and has constructed and is maintaining its line, may be compelled to so operate its line as reasonably to meet the necessities of the public; and, as we think, it is quite a different one that a railroad company, by the acceptance of its charter, which simply makes it lawful to construct and maintain a railroad, assumes an obligation to construct it and to maintain its operation so long as its corporate existence may continue.

The latter question was presented in the case of the York and North Midland Railway Company v. The Queen, 1 Ell. & Bl., 858. There the company had constructed its line in part only. The purpose of the suit was to compel it by the writ of mandamus to construct the entire road. In the Court of Queen's Bench, there was a judgment for the relators—two of the judges concurring in opinion, and one dissenting. This judgment was reversed in the Exchequer Chamber by the unanimous opinion of the nine judges who sat upon the case. The Chief Justice, who delivered the opinion of the court upon the hearing of the writ of error, after stating the facts, propounded the questions to be decided as follows: "Upon these facts several points arise: 1. Does the statute of 1849 cast upon the plaintiffs in error a duty to make this railway? 2. If it does not, is there under the circumstances a contract between the plaintiffs in error and the land owners which can be enforced by mandamus? 3. And, failing these propositions, does a work which in its inception is permissive only become obligatory by part performance?" The second question does not concern us here. The charter in this case did not involve nor did it grant the taking of private property for the public use. After concluding that there was no language in the statute from which it could be inferred that it was the intention of parliament to make it obligatory upon the company by the acceptance of the charter to construct the entire line of railroad, the court in their opinion decide the first question as follows: "It seems to us, therefore, that these statutes do not cast upon the plaintiff in error this duty, either by express words or by implication; that we ought to adhere to the plain meaning of the words used by the Legislature. which are permissive only; and that there

is no reason in policy or otherwise why we should endeavor to pervert them from their natural meaning." Upon the third the court speak as follows: "There remains but one further view of the case to be considered; and of that we have partly disposed in the observations which we have already made. But inasmuch as Lord Campbell proceeded upon this ground only in the court below, although it was not much relied upon before us in argument, we have out of respect to his high authority most carefully examined it, and are of opinion that the mandamus cannot be supported upon the ground that the railway company, having exercised some of its powers, and made part of their line, are bound to make the whole railway authorized by their statutes." The opinion throughout bears the marks of the most careful consideration and is supported, as we think, by argument which cannot be satisfactorily answered.

The authorities upon the precise point are but few. But the question arose in the case of Minnesota v. The Southern Minnesota Railroad Company, 18 Minn., 40, and the writ of mandamus was refused because the statute which authorized the construction of the railroad neither in express terms nor by reasonable construction imposed upon the company the specific legal duty of constructing it. The general principle was also affirmed in the case of the Northern Pacific Railroad Company v. Washington, 142 U. S., 492. The attempt in that case was to compel a railroad to establish and maintain a station at a point where it was alleged the interest of the public required such station. But upon the point decided in that case the decisions are in conflict.

The case of the State v. The Hartford and New Haven Railroad Company, 29 Conn., 538, presented a question very like that under consideration. In that case the company was chartered to run its line from its initial point to a point on the tide water. It constructed and for a while maintained its road to the tide water; but, having entered into a contract for a connection with another company, it diverted its line a mile and a half from the water terminus and ceased to carry passengers to the latter point, though it continued to carry freight. The court held that it could be compelled by mandamus to carry both passengers and freight as required by its charter. But it was contended on behalf of the relators, that its charter by its terms imposed the duty upon the company to construct and operate its entire line and especially forbid it to discontinue any part of its line that had been put in operation. On the other hand counsel for the company maintained that the charter granted a privilege merely and did not impose a duty. The opinion upon the main question is very brief, and it is impossible to ascertain from it how the court determined the question of the construction of the charter so pointedly presented in the briefs. But in discussing another question in the case, the court use this language: "What right have they to covenant with that corporation that they will not run cars to tide water as the charter provides they shall," etc.; from which it may be inferred that they adopted the construction contended for by the counsel for the rela-

tors.   If the language of the·charter is correctly quoted in the brief of counsel, as doubtless it was, we think that it impliedly made it the duty of the company to continue to operate so much of its line as it should once construct and operate, and that therefore the decision is not in conflict with the cases previously cited.

We have a similar difficulty with the case of the City v. Railway, 51 Kan. 609.   That was an action to compel a street railway company to operate a portion of its line which it had discontinued.   The court may have intended to hold broadly that a company which has accepted a mere privilege to build a street railway, and has constructed and operated it may be compelled by the writ of mandamus to continue its operation.   The opinion admits of that construction;   but the important question, whether the mere grant of a privilege imposes a duty, is not discussed.   The ordinance under which the company acted, however, contained a requirement that the "said railway shall be so operated that a car shall pass any given point each way on the route at least every twenty minutes for 12 hours, and at least once every 30 minutes for four hours, during that part of the day the road shall be operated."   These are words of command, and may be construed as making it the duty of the company, in case it should construct and operate its road, to continue to operate every part of its line.   The opinion, we think, might have been safely placed upon this requirement. But whether such was or was not the intention of the court, we cannot say, from the opinion.

In the case of the People v. Railway, 24 N. Y., 261, the company had completed its entire line, but had ceased to operate a part of it; and a suit was brought in equity to compel a specific performance of that duty.   It was held that a specific performance could not be compelled in that form of action, and that the suit was properly dismissed.   The judge who wrote the opinion expressed the view that the only remedy was by quo warranto to forfeit the charter; but in this the majority of the court did not concur.   It is evident, however, that the right to a writ of mandamus was not involved in that decision.

The Legislature, in creating a corporation, has the power to give it an option to do or not to do the acts which it is authorized to perform. On the other hand, it may impose upon the corporation, as the law of its creation, the obligation to exercise to their fullest extent the powers which are granted.   In either case, the proposed corporators may accept or not; and in the latter, if they do accept, they may be compelled by mandamus to perform the duties so imposed.   But to say that in granting a charter to do a public service there is no difference between making it lawful to do an act and imposing it as an obligation to perform it, is to say that, by reason of the public interest involved, language is to have a different construction and effect from what it would have in statutes in general, or in private contracts.   Expressions may be found, in the opinions of courts, which countenance that doctrine, but we think there it is based upon an assumption that cannot be maintained

upon sound principle. In legislating, the law making power undertakes to determine what is to the interest of the public, and, under the limitations of the Constitution, it is the sole judge of what will promote the public utility, and must be presumed to be capable of expressing its will in intelligible words. When, therefore, a corporation, whether quasi-public or purely private, is granted the privilege of doing an act, and there are in its charter no express terms which make it obligatory to do the act, or other words from which by fair construction that intention can be gleaned, we do not see upon what sound principle the duty can be imposed.

The allegations in the petition in this case show that the respondent company was chartered merely for the purpose of constructing and operating street railways in the city. The special act merely gave it the right of corporate existence for the purpose indicated. (Tugwell v. Eagle Pass Ferry Co., 74 Texas, 480.) The streets were under the control of the city council. The company could do nothing without the consent of the council. The franchise in question was granted by the city council, and the claim is that it is by virtue of that concession, and its acceptance by the company, that the duty arose. But the ordinance (which is quoted above) merely grants "the privilege" of constructing and maintaining street railways over the lines therein designated. No clearer words of mere permission could have been employed. Not only this, but there is in the ordinance neither sentence, phrase nor word that indicates that it was the intention of the council to make it a condition of the acceptance of its grant that the company should be bound to construct and operate railways over the streets which were therein specified. The company are required to observe all the ordinances of the city then existing, but it is not averred that there was any ordinance in existence at the time of the acceptance of the franchise which imposed that obligation.

The following succinct and accurate statement of the law from Redfield on Railways has been often quoted with approval: "Where the charter of a corporation, or the general statute in force and applicable to the subject, imposes a specific duty, either in terms or by fair and reasonable construction and implication, and there is no specific or adequate remedy, the writ of mandamus will be awarded." It is clear that the ordinance in this case neither by express terms nor by implication imposes the duty upon the company. If the duty to construct and maintain the line is to be established, it must be upon the assumption that every privilege granted by a legislative body in reference to matter of public interest imposes upon the grantee who accepts it the duty to perform the acts he is allowed to perform. The assumption, in our opinion, is, as we have already intimated, not based upon sound reason, and is in opposition at least to the weight of authority.

Of the numerous similar franchises granted in this State many have doubtless been abandoned, without objection, so far as we are advised, from any quarter. It does not follow, that a just objection may not

have been made; but the fact that none has been made serves, we think, in some measure, to show that the practical construction of such charters has been that the grant is permissive, and not obligatory.

We are of opinion also that the fact that the road has been constructed and operated, and that a part is now operated, makes no difference. Under the grant of a privilege to construct and maintain, if after acceptance it is permissive only to construct, it is not obligatory to maintain. But we do not hold that the company can, against the will of the city, operate a part of its line and not the whole. A privilege to establish an entire line of street railway may be granted when the privilege of constructing and operating a part only would not be; and for a failure to operate a part, it would seem that the whole might be forfeited. It seems to us that the remedy in this case is to forfeit the franchise to operate the branch line in controversy. The defendant in its answer offers to discontinue the operation of the branch, and apparently this would have been a good answer to the petition if an answer had been necessary.

We would not be understood as holding that the common law does not impose some duties upon companies chartered as common carriers which may be enforced by mandamus, although no mention of such duties may be found in their charters. All carriers who undertake to transport goods or passengers for the public assume certain duties to the public; but certainly carriers who are not corporations may at any time discontinue the business, if they elect to do so; and we see no good reason why corporations may not discontinue their enterprises when the charter does not in express terms, or by fair implication, forbid it. If it is the will of the Legislature or of a municipal body, to whom the power to confer the privilege may have been granted, to impose upon the corporation the duty to construct and to continue to operate the work, instead of a mere permission to do so, it is not difficult so to provide by incorporating into the grant some language which evinces that intention.

It follows that, in our opinion, the trial court erred in overruling the demurrer to the petition, and that the Court of Civil Appeals erred in not so holding. It not appearing that that petition may be amended so as to state a good cause of action, the judgment of the Court of Civil Appeals and that of the District Court are reversed, and the cause dismissed.

                                        *Reversed and dismissed.*