## FRANKLIN FIRE PROOFING COMPANY v. CITY OF DALLAS ET AL.

### Decided May 14, 1902.

**1.—Mandamus—Specific Performance—Street Paving Contract.**

Where a city's contract for grading and paving a street binds the contractors to repair defects, and it has taken a bond for faithful performance, it can not compel the contractor to repair by mandatory injunction, since it has an adequate remedy at law and a decree of specific performance could not be enforced by the ordinary processes of the courts.

**2.—Same—Mandatory Injunction.**

The law applying to an ordinary writ of mandamus applies to the writ of mandatory injunction.

Appeal from Dallas. Tried below before Hon. T. F. Nash.

*J. J. Eckford,* for appellant.

*W. T. Henry* and *Jas. J. Collins,* for appellee.

FLY, ASSOCIATE JUSTICE.—The city of Dallas instituted this suit against appellant and the National Surety Company to obtain a mandatory injunction requiring and commanding the defendants to keep and maintain in good condition a certain portion of Main street in said city for the period of ten years when notified by the city engineer according to the terms of a certain contract made by appellant with the city, the surety company having signed a bond for the faithful performance of said contract. The court rendered judgment commanding appellant and the surety company to repair the street as prayed for. Afterwards the

judgment was set aside as to the surety company and it was adjudged that as to it no recovery should be had by the city of Dallas.

On January 18, 1899, appellant entered into a contract with appellee by which it agreed to grade, fill, and pave with asphalt Main street, in the city of Dallas, extending from the east side of Austin street to the west side of Ervay street, the tools, machinery, and material to be furnished by appellant. The contract contained the following provision:

"The said contractor also in consideration of the payments and covenants hereinafter mentioned, to be made and performed by the said city, does agree and undertake to keep and maintain the said pavement from foundation to surface in good order and condition for a period of ten years from the day the pavement is completed and accepted by the said engineer, and it binds itself and its successors, at its own costs and expense, to maintain and look after such pavement and to replace and restore the same, or any part thereof, if in the opinion of the city engineer (such opinion to be conclusive on the question) such pavement shall within the period of ten years from its completion prove worthless or unsuitable for the purposes intended, because of defects or imperfections in the work or material, and to make all repairs which, in the opinion of the city engineer of the city, may become proper, because of the wear and tear of the pavement or from any imperfection in said work or materials, or from rotting, crumbling, or disintegration of the materials which may have taken place within said period of ten years, provided that such guarantee shall not bind such contractor to maintain and repair such pavement against injuries thereto caused by casualties or accidents not incident to the usual and ordinary uses to which said street may be put by the public. And said contractor will, at the time of entering upon and agreeing to this contract, give an approved bond in the sum of ten thousand dollars as a guarantee hereunder, during the period extending from the date of this contract, to five years from the completion of the pavement, and in the sum of five thousand dollars for the remaining five years, conditioned as well that said contractor shall keep and maintain the said pavement in the condition above specified for the said period of ten years, and shall replace or restore the same, if deemed necessary by the engineer, as above provided, and that neither the city nor the property holders along said street shall be at any expense whatever for the repair that may be necessary to maintain the said street in such condition as above specified, as, that the said contractor shall skillfully and in a good and workmanlike manner construct said street in the first instance and will faithfully perform all things by it to be performed according to the terms and conditions of this contract."

There is a further provision as follows:

"That if at any time within ten years from the completion of the pavement herein contracted for the said pavement shall, in the opinion of the then city engineer, whose determination shall be conclusive, be in need of repair under the maintenance clause of this contract, then such

engineer shall mail a notice at the postoffice in Dallas, directed to said contractor at Dallas, Texas, describing the kind of repair required and the locality thereof, and thereupon such contractor shall commence to make such repair within five days after the mailing of such notice, and complete the same under the direction of the said engineer with reasonable dispatch; and if the said contractor shall then fail to commence the said work of repair within the said time, the said city may then cause said work to be done at the expense of the said contractor and shall then be entitled to recover double the amount of such expense as a penalty against the said contractor and the sureties on its bond, which sum may be recovered by suit on said bond herein provided for, and in such case the estimate of such cost made by said engineer shall be final and conclusive of the amount."

At the same time the contract was made appellant gave a bond, with the National Surety Company as surety, for the faithful performance of the contract. The street was paved with asphalt, as provided in the contract, and afterwards, breaks and defects appearing, appellant was given notice to repair and failed and refused to do so. Main street was one of the chief thoroughfares of the city.

There was a clear infraction of the contract to repair for ten years, and the question is fully and fairly presented, can the city of Dallas, through the medium of a mandatory injunction, enforce a specific performance of the contract?

It is stated by Mr. Pomeroy in his Equity Jurisprudence, section 1341, that "where the agreement stipulates that certain acts shall not be done, an injunction preventing the commission of those acts is evidently the only mode of enforcement; but the remedy of injunction is not confined to contracts whose stipulations are negative; it often extends to those which are affirmative in their provisions, where the affirmative stipulation implies or includes a negative."

The same author says that the universal test of jurisdiction in the courts of England and America is the inadequacy of the legal remedy for damages. He confines the issuance of mandatory injunctions to cases of nuisance, interference with easements, or continued trespass, and says that in strictness such writs are merely interlocutory or preliminary in their nature.

The learned author further says: "The universal test of the jurisdiction, admitted alike by the courts of England and of the United States, is the inadequacy of the legal remedy for damages in the class of contracts to which the particular instance belongs." The three classes of contracts to which Mr. Pomeroy says the writ is applicable are: "(1) Those restrictive covenants which create equitable easements; (2) agreements stipulating for personal services or acts; (3) other agreements generally negative in their nature." Under the second head are contracts for special or extraordinary personal services, as for example by an eminent actor, singer, or artist and the issuance of the writ is justi-

fied because the remedy at law for damages would be wholly inadequate. It is, however, a familiar doctrine that a court of equity will not exercise its jurisdiction to grant the remedy of specific performance, however inadequate may be the remedy of damages, whenever the contract is of such a nature that the decree for its specific performance can not be enforced and its obedience compelled by the ordinary processes of the court."

In this case the contract is for a continuous service during ten years as often as the defects in the streets may require repairs, and a decree of specific performance would be an impossibility, because a court can not by its ordinary means and instrumentalities enforce its decree. The work to be done on the street in the future is indefinite and unknown, and a court could not assume the care, supervision, and control of a contract where the details are necessarily indefinite. The trial court realized its inability to enforce the performance of the contract, as prayed for by appellee, and by its decree only required the repair of defects then existing.

In this case appellant had a full and adequate remedy at law for any failure to comply with the terms of the contract, the performance of which was insured by a valid bond given in connection with it.

A number of cases have been cited by appellee to sustain the judgment of the trial court, but not one contains anything tending to sustain the issuance of a mandatory injunction to compel the partial performance of a contract like the one in this case, as a brief review of them will clearly demonstrate.

The injunction sought in the case of the State of Texas v. Goodnight, 70 Texas, 682, was to compel the removal of fences placed around lands belonging to the State. The object was not to enforce a contract but to compel the undoing of a wrong and trespass committed. The fence was a public nuisance.

So in the case of Summer v. Crawford, 91 Texas, 129, the injunction was issued to compel the restoration of goods unlawfully taken from a trustee by a sheriff. It was not granted to enforce a contract but to prevent a trespass.

In the case of Cleburne Water, Ice and Lighting Company v. City of Cleburne, the former had agreed to furnish water at certain rates and had charged higher rates, and had threatened to cut off the supply of water unless the higher rate was paid, and it was held that the water company could be restrained by injunction from committing the intended wrong, and indirectly such restraint compelled the water company to comply with its contract, which was definite and the performance of which was capable of being enforced.

In all the cases cited from other States the writs were issued to compel the performance of statutory duties, the removal of nuisances or the restoration of highways torn up by parties.

In the case of City of Moundsville v. Railway, 20 Lawyers' Reports

Annotated, 161, decided by the Supreme Court of Appeals of West Virginia, and strongly relied on by appellee, the railway company by permission of the city had torn up a street in order to place its track thereon, the ordinance granting such permission requiring that the railway company should put the street in good order. This the railway company refused to do, and it was held that it could be compelled to do so through a mandatory injunction. The railway company had torn up the street and the West Virginia court held that the company had created a public nuisance, and that under the common law, the statutes of the State, and the ordinance of the city the railroad company owed the duty to the public to place in order a public highway torn up by it. It is not intimated in that or any other opinion that a contract will be enforced between a city and a private corporation merely because a failure to do so may indirectly affect the public interest.

Appellant is a private corporation owing no duty to the public so far as the streets of Dallas are concerned, and in considering the propriety of granting a mandatory injunction to compel it to repair Main street, in Dallas, its contract must be viewed as would the contract of an individual. The defects in the street were not caused through its agency, and if a nuisance has arisen through a failure to repair, its inaction does not furnish a basis for an application to a court of equity for relief. It owes no more duty to the public in connection with this contract than any individual would owe in any other contract, and there is a full and adequate remedy at law for any injury resulting from the breach of the contract. The duty to keep the streets in order rests upon appellee, and where it has contracted with a corporation or individual to perform this duty for it, its duty remains the same, and it must in case of a breach of the contract to make repairs find redress as anyone else would in case of such breach.

The law applying to an ordinary writ of mandamus applies to the writ given the dubious and somewhat contradictory title of "mandatory injunction," and in the case of Street Railway v. State, 90 Texas, 520, it was held that a corporation could not be compelled by mandamus to perform an act not made incumbent on it by its charter or the statutes of the State. The decision quotes approvingly from Redfield on Railway as follows: "Where the charter of a corporation or the general statute in force and applicable to the subject imposes a specific duty, either in terms or by fair and reasonable construction and implication, and there is no specific or adequate remedy, the writ of mandamus will be awarded." The court said: "The Legislature in creating a corporation has the power to give it an option to do or not to do the acts which it is authorized to perform. On the other hand, it may impose upon the corporation, as the law of its creation, the obligation to exercise to their fullest extent the powers which are granted. In either case, the proposed corporators may accept or not; and in the latter, if they do accept, they may be compelled by mandamus to perform the duties so imposed." In other words,

the decision holds that a private corporation can not be compelled by mandamus to perform a duty not imposed by general statute or the terms of its charter. It is not claimed that the writ is sought in this case to compel a statutory or charter duty.

The judgment is reversed and the cause dismissed.

*Reversed and dismissed.*

Writ of error refused.