STATE *vs.* THE HARTFORD AND NEW HAVEN RAILROAD COMPANY.

The Hartford and New Haven Railroad Company was chartered to construct and operate a railroad from Hartford *to the navigable waters of New Haven harbor.* A steamboat company was afterwards chartered to run in connection with it to New York, and the railroad and line of steamboats constituted a route that was of

State *v.* Hartford & N. Haven R. R. Co.

great convenience to the public. After the construction of the road and the use of it in connection with the steamboat line for several years, the railroad company constructed a track diverging from the original track at a point a mile and a half from its terminus at tide water, and running to the station of the New York and New Haven Railroad Company in the city of New Haven, and discontinued the running of passenger trains to the original terminus at tide water. This change incommoded travelers who wished to pass by the steamboat route, of whom there were many. Held, that a mandamus ought to be issued to compel the railroad company to run passenger trains to the original terminus.

The railroad company had discontinued the running of passenger trains over that part of the road, under a contract with the New York and New Haven Railroad Company, by which the latter was to prevent the extension of a certain railroad chartered by the legislature which would interfere with the Hartford and New Haven road, and the New York and New Haven road was to secure an advantage over the line of steamboats in competing for public travel. Held, that this contract was void, as against public policy.

Held also, that the mandamus was properly applied for by the attorney for the state.

APPLICATION for a mandamus, by the attorney for the state, against the Hartford and New Haven Railroad Company.

The application alleged that the respondents were incorporated by the legislature of this state in the year 1833, with power to construct and operate, and for the purpose of constructing and operating, a railroad for the transportation of passengers and freight, from the city of Hartford *to the navigable waters of New Haven harbor at some point between the canal basin and the west end of Tomlinson Bridge,* and by a later act were empowered to extend their road to the north line of the state, and thence, with the assent of the state of Massachusetts, which was soon after obtained, to Springfield in that state ; that the road was soon after constructed and put into operation between Springfield and the waters of New Haven harbor at a point within the prescribed limits ; that the connection of the road at Springfield with various important roads leading in all directions, made it a thoroughfare of great importance ; that the road connected at its terminus at New Haven harbor with a line of steamboats which was established and run under an act of incorporation granted by the legislature of this state, for the transportation of persons and freight from said railroad to the city of New York, and from the latter to said railroad, and that said railroad and line of steam-

boats had for a long time constituted a direct and important route for the public travel, greatly accommodating the same and necessary to the public convenience ; and that the respondents were obligated by the terms of their charter to run their cars and transport passengers to said terminus, to such an extent as to afford reasonable accommodation to the traveling public ; but that the respondents, some time before the bringing of the application, had wholly discontinued the running of their passenger trains to said terminus, although they had been often requested to continue them by persons desirous of being transported over that part of their road, and that they now wholly refused to run their passenger cars over that part of their road. The attorney moved therefore for a mandamus, ordering the respondents to run their cars over that part of their road, in such a manner as should reasonably accommodate the public travel and conform to the requirements of their charter, or show cause to the contrary.

The superior court issued an alternative mandamus, and the respondents came into court and filed the following return.

" The Hartford and New Haven Railroad Company would respectfully represent, that they admit that they were incorporated in the manner alleged and with the power to construct a railroad, and that they have constructed a railroad and are now the owners of the same, terminating at the navigable waters of New Haven harbor ; and that the same is connected with steamboats and railroads as in said application set forth, and has formed a line of public travel as alleged, and that the respondents refuse to run their cars for the transportation of passengers over and upon that part of the same leading to and from said terminus ; and for reason of such refusal they say, that they are not required by their said charter to transport passengers over and upon the same ; and they further say, that heretofore, to wit, on the 16th day of March, 1850, they entered into a certain contract of that date with the New York and New Haven Railroad Company, the object of which was, among other things, to prevent the extension of a certain railroad in this state, known as the Canal railroad, beyond a certain station in this state on said road,

called and known as the Granby station, in a direction toward Springfield, either under the then charter of said Canal road or any other charter procured therefor, and in consideration of the covenants and agreements on the part of said New York and New Haven Railroad Company, to prevent or hinder such extension, and the operating of the same if extended, in connection with said Canal railroad as in said contract provided, the respondents covenanted and agreed among other things to and with said New York and New Haven Railroad Company, that said latter company should receive from the respondents the sum of $1,000 per month during the continuance of said contract, and until the 1st day of July, 1869, and that the respondents would not during said term run any passenger train over their road, in connection with any steamboat running between New York and New Haven, and would not, during said term, run any passenger trains to or from the steamboat dock in New Haven, the said dock being the terminus of their said railroad at said navigable waters at New Haven harbor, but would run all their passenger trains to, and start them from, the station near Chapel street, on the road of said New York and New Haven Railroad Company, the said point of such stopping and starting of said passenger trains being about one and one-half mile distant from said terminus at said navigable waters of New Haven harbor, and that said term has not yet expired during which the respondents, by the terms of said contract, covenanted and agreed that they would not run passenger trains over that part of their said road; and that the said New York and New Haven Railroad Company insist on the observance of said contract as binding and obligatory upon the respondents, and that they should not run their trains or transport passengers to and from said terminus, as in said order required. Whereupon said Hartford and New Haven Railroad Company say that no further or peremptory mandamus should issue against them, but that the proceedings should be discontinued against them."

The attorney for the state demurred to this return, and the case was reserved by the superior court, upon these pleadings, for the advice of this court.

*Hubbard*, state attorney, for the state.

1. The railroad company are bound by the terms of their charter to run passenger trains over the whole road. The object of their incorporation, as expressed in the charter, was the construction of . a road, not merely to the city of New Haven, but to the navigable waters of New Haven harbor. Charter, § 1. 2 Priv. Acts, 1002. They accepted the charter with this known object, have constructed their road to the steamboat wharf in the New Haven harbor, and for several years ran all their trains to that point, and still run their freight trains there, but they now refuse to transport their passengers to that point. It is manifest from the terms of the charter that they are bound equally to run passenger and freight trains over their road, for it provides for both in the same clause, viz:—that they are to " take and carry property and persons." § 1. That they can not discontinue the operation of any portion of their road, is evident from the 15th section of the charter, which provides that, within a time limited, they shall " complete and *put in operation*" the whole road; and from the amendment of the charter in 1839, (4 Priv. Acts, 899,) which provides that the company may, before the completion of the road, discontinue such parts of the route as are not required by public convenience, and clearly implies that they may not discontinue any portion after it is completed. Further, the company could be authorized to take land only for " public use." That public use was the transportation of freight and passengers. The company can not refuse to perform this public duty while retaining the land which they received only for the purpose of this duty. Railways are now considered public thoroughfares equally with turnpikes and common highways. The public have a right in them that is just as absolute. The corporation is a trustee for the public. *Inhabitants of Worcester* v. *Western R. R. Corporation*, 4 Met., 564. *Swan* v. *Williams*, 2 Mich., 427. Further, by refusing to perform this duty the respondents deprive the land-owner, whose land was taken for the road, of the very benefit which was considered in estimating the damages allowed him for the land taken.

2. If the respondents are bound to operate their whole road, as we claim, then a mandamus is the proper remedy to compel the performance of the duty. *Rex* v. *Severn & Wye Railway Co.*, 2 Barn. & Ald., 646. *Regina* v. *Trustees of Luton Roads*, 1 Q. B., 860. *Regina* v. *Bristol Dock Co.*, 2 id., 64. *Regina* v. *Birmingham & Gloucester Railway Co.*, id., 47. *State* v. *Wilmington Bridge Co.*, 3 Harring., 314. *Treat* v. *Middletown*, 8 Conn., 246. And where public rights are to be enforced by mandamus the application should be made by a public officer. *Rex* v. *Merchant Tailors' Co.*, 2 Barn. & Adol., 115. *Wellington* v. *Petitioners*, 16 Pick., 105. *Sanger* v. *County Commissioners*, 25 Maine, 296. *Heffner* v. *Commonwealth*, 28 Penn., 108. *County of Pike* v. *State*, 11 Ill., 202.

3. The contract set up in the return constitutes no answer to the application. That contract was void in its inception. A covenant not to perform a public duty is always void. It was void also for further reasons. 1st. Because it was designed to suppress another important public work which the legislature had considered as demanded by the public convenience. 2d. Because its object was to secure a monopoly to each of the parties to it. 3d. Because it operated as an assignment of the franchise and of all the rights of the Canal road. The powers and duties of one railroad company can not be assigned to another. *Beman* v. *Bufford*, 6 Eng. Law & Eq., 106. *McGregor* v. *Deal & Dover Railway Co.*, 16 id., 180. *Johnson* v. *Shrewsbury & Birmingham Railway Co.*, 19 id., 584. *East Anglican Railway Co.* v. *Eastern Counties Railway Co.*, 11 C. B., 775. *Troy & Rutland R. R. Co.* v. *Kerr*, 17 Barb., 601. Redfield on Railways, § 181.

*C. Chapman*, for the respondents.

1. The respondents are to be regarded as a private and not as a public corporation. They are liable to have their property attached and sold on execution, and may make an assignment in insolvency, and be carried by their creditors into insol-

vency. *Platt* v. *N. York & Boston R. R. Co.*, 26 Conn., 544. See also remarks of Storrs, C. J., id., p. 572. *Hooker* v. *New Haven & Northampton Co.*, 15 Conn., 322. *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 id., 306. *State* v. *Rives*, 5 Ired., 297. A mandamus would never be issued to compel a corporation to do that which any creditor could, at any time, by a process issuing from the same court, prevent it from doing.

2. There is nothing in the charter of the company which requires them to run their trains over any particular part of their road, or indeed to operate their road at all. It is wholly *permissive* in its terms. The respondents are *authorized and empowered* to construct, &c., and again are *authorized* to *make* and *use* the road, &c. It provides expressly that the directors shall have power to regulate the time and manner of transporting freight and passengers, and that they may fix the fares to be paid by travelers. Suppose that instead of discontinuing the running of trains on a part of their road they had fixed the fares for travel upon that part of the road so high as to constitute essentially a prohibition of travel upon it. This would have been within the express authority of the charter. The provision that unless the road was completed within six years the charter should become void, shows that the legislature was conferring a privilege upon them, not imposing a public duty. If the public convenience had been an object which it was so important to secure, it would not have been left to the election of the respondents whether to go on or not. The mere incorporation of the respondents can not of itself create this duty. If a company was incorporated with power to run a line of steamboats between Hartford and New York, and after running them for a while should abandon the enterprize as unprofitable, it can not be claimed that a mandamus would lie to compel them to continue to run the boats. The only difference between that case and this, is that here, under power given by the charter, land has been taken for the use of the road. But, if a duty grows out of this fact, the land-owners alone are the parties aggrieved and they alone can complain.

Redfield on Railways, §§ 191, 192. *York & N. Midland Railway Co.* v. *Regina,* 18 Eng. L. & Eq., 199.

3. If a duty is created by the charter of the company, yet a mandamus will not be issued to compel them to perform it. This writ will never be issued where there is another available remedy. Here, if the charter imposes the duty, a refusal to perform it would constitute sufficient ground for a proceeding of *quo warranto.* Further, the writ of mandamus is never issued as a matter of course; there must be an exigency. It is a prerogative writ, to be granted only where there is a clear necessity. Here there is no such necessity. The company have constructed a track which connects their road with that of the New York and New Haven Railroad Company at the city of New Haven, and by this means the public convenience is far better subserved than by the running of their passenger trains to the steamboat dock, which is at a great distance from the city and from the station of the New York and New Haven road. The great object of the charter, which was to provide for travel from Hartford to New Haven and for the travel to and from New York by that route, is far better answered than it would be by continuing the terminus of the road at the steamboat dock. The New York and New Haven road did not exist when the charter was granted, and the new facilities afforded by it made the change necessary for the public convenience. Besides, the public have acquiesced now for several years in the change—not only showing that it was for the public convenience, but presenting a reason why, after so long a time, the court, in the exercise of its discretion, should not interfere by the extraordinary writ of mandamus. 1 Chitty Gen. Prac., 800.

4. The contract between the respondents and the New York and New Haven road is a valid one, and should be considered by the court. The charter of the latter company expressly empowers it to make contracts with any other railroad company with regard to the business of the road. Charter § 1. 4 Priv. Acts, 1020. Whatever may be the duty of a railroad company after its road is completed, yet it has clearly the right

to discontinue the construction of the road before completion, and the provision of the contract that the Canal road should not be extended was therefore in contravention of no obligation. *York & N. Midland Railway Co.* v. *Regina*, 18 Eng. L. & Eq., 199. Here the parties themselves treat this contract as valid and are performing it, and the court will not, merely at the instance of other parties, declare it void.

ELLSWORTH, J. We consider the return made by the respondents to the mandamus unsatisfactory and insufficient, presenting no reason why the order should not be immediately executed.

The respondents admit that they have accepted their charter, made and completed their road as required, and for years have continued to run cars upon it for freight and passengers to and from tide water in the harbor of New Haven in connection with steamboats from New York; and they do not deny that they are now using that part of their road for the transportation of freight, but they refuse, and have for some time past refused, to use it for the transportation of passengers. And it is substantially admitted by the return that the public convenience will be subserved by the use of this part of the road.

Now it is difficult to perceive upon these premises on what ground the respondents can justify their refusal to discharge their entire corporate duty; how they can expect to retain their franchise, and pay no attention to the duty it enjoins upon them.

The contract with the New York and New Haven Railroad Company, that they will not permit the public to enjoy the benefit of this part of their road, amounts to nothing. It is in our judgment an aggravation of their censurable neglect of duty, instead of a legal excuse for the neglect. What right have they to covenant with that corporation that they will not run cars to tide water, as the charter provides that they shall, and as the public accommodation requires, especially when they enter into that covenant to secure to that corporation a monopoly of the public travel to and from New York,

and, as an equivalent, to secure to themselves a like monopoly of all the travel in the Connecticut valley, to the prejudice of every other corporation that might have an interest in those routes ? The whole proceeding, from first to last, seems to us to be in contravention of the charter obligations of both these companies, and to present a case of odious monopoly, if not of positive oppression and wrong, which can receive no countenance from an impartial tribunal.

We hardly know what doubtful principles of law are thought to be involved in the case. The respondents certainly were bound to make their road (if at all) within the time prescribed in the charter ; and, having made it, to put it into use—every material part of it—and keep it in use until discharged by the legislature. And this continuous duty is in no manner inconsistent with the power in the company, (which has been so much dwelt upon in the argument,) to regulate and control the manner of using the road by wholesome rules and by-laws. These we admit are necessary and allowable ; but then they must be such as are really promotive of the original design of the charter, and not such as tend to defeat that design. Under the contract in question, viewed in the most favorable light, persons traveling by railroad down the valley of the Connecticut, and desiring at New Haven to take the steamboat for New York, and those coming by steamboat from New York and desiring to take the cars, must necessarily be exceedingly incommoded ; while this very course of travel was well known when the charter was granted, and was intended to be secured and promoted by it.

We forbear going into other questions raised on the trial, or commenting on the authorities cited by counsel. We think it unnecessary, and prefer to place our decision upon the simple ground of the corporate duty of the respondents. All jurists and judges will at once agree that chartered companies are obliged fairly and fully to carry out the objects for which they are created, and that they can be compelled by mandamus to do it; and it will not be questioned that in the case of public highways, whether turnpikes or railroads, they are bound to keep them fit for use, and, in the case of railroads,

to keep them furnished with suitable cars, engines and attendants, without which they can not be used at all.

We advise the issuing of a peremptory mandamus.

In this opinion the other judges concurred.

Peremptory mandamus to be issued.

NOTE.—The foregoing case was argued as of the February term at the meeting of the judges in July. At this time Storrs, C. J., had deceased, and the court was composed of Hinman, C. J., Ellsworth, Sanford, and Butler, Js.

SUPREME COURT OF ERRORS.

WINDHAM COUNTY, MARCH TERM, 1861.

Present,

HINMAN, ELLSWORTH, AND SANFORD, Js.