STATE *ex rel.* TOMPKINS *et al.* v. CHICAGO, ST. P., M. & O. RAILWAY CO.

Under Laws 1897, Chap. 110, §§ 16-18, providing that the railroad commissioners shall have the supervision of all railroads, and shall notify railroad companies whenever, in their judgment, "additions" to stations or station houses are expedient, they have authority to require a railroad to construct a suitable station house at a regular station used by it for the receipt and discharge of passengers and freight, where the only existing accommodation is a platform and side track, and there is a clear public necessity for such a building.

(Opinion filed January 10, 1900.)

306   STATE *ex rel.* TOMPKINS *v.* C., ST. P. M. & O. RY. CO.

Opinion of the Court—FULLER, P. J.          [ 12 S. D.

Appeal from circuit court, Hanson county.   Hon. FRANK B. SMITH, Judge.

Action by the state, on the relation of W. H. Tompkins and others, as railway commissioners for the state of South Dakota, against the Chicago, St. Paul, Minneapolis & Omaha Railway Company.   From an order overruling a demurrer to the petition, defendant appeals.   Affirmed.

The facts are stated in the opinion.

*H. H. Keith, L. K. Luse* (*Thomas Wilson,* of counsel), for appellant.

The railroad commissioners had no power or authority under the law to make the order requiring appellant to provide a depot at the village of Farmer, and the court had no power to enforce the same.   Railroad v. Dustin, 142 U. S. 492; People v. Railroad, 104 N. Y. 58; Sedgwick Const. Stat., pp. 267, 269; Sutherland Stat. Const., §§ 208, 290; Kirby v. Telegraph Co., 4 S. D. 463; Minnehaha Co. v. Thorne, 6 S. D. 449; State v. Railroad, 83 Mo. 144; Railroad Commissioners v. Powers, 35 Am. & Eng. R. R. cases 542; State v. Railroad, 49 Am. & Eng. R. R. cases 176; State v. Railroad, 52 N. W. 490; State v. Railroad, 54 N. W. 461; State v. Railroad, 77 N. W. 104.

*John L. Pyle,* Attorney General, and *T. H. Null,* for respondent.

Cited *contra.* Smith v. Railroad, 53 N. W. 130; State v. Railroad, 53 N. W. 323.


FULLER, P. J.   On the 16th day of September, 1897, certain citizens engaged in busines at the village of Farmer, a station on defendants line, applied by petition stating sufficient facts to the board of railroad commissioners for an order requir-

ing the defendant to provide a depot at that place for the receipt and discharge of passengers and freight, the only present accommodations of that nature being a platform and side track. A copy of this petition, together with a notice of the time and place of hearing, were duly served on defendant, who appeared before the commissioners, and, in effect, admitted the existence of facts sufficient to entitle petitioners to the relief sought, but denied the legal authority of the commissioners to order it to build and maintain a depot or station house, After an orderly examination of numerous witnesses, and a careful investigation of the matter, full findings of fact were prepared, and the conclusion was reached by the board of commissioners that the depot should be built, and it was accordingly so ordered. Defendant having thereafter advised the board of commissioners in writing that its order would not be complied with, and that no depot would be constructed at the station of Farmer, the matter was, by said board, and in the manner provided by statute, presented to the circuit court, and this appeal is from an order overruling a demurrer to a petition which confessedly states facts sufficient to show the necessity for and public utility of such a building at that station. As the authority of the commissioners to require the construction of a station house in any event, and the power of the court to enforce such an order, is the only question presented by the demurrer, no specific statement of the grievance complained of is essential to a determination of the point. For the purposes of the demurrer it is admitted that there is a clear and pressing public necessity for the building of a proper station house on appellant's railway at the town of Farmer and its ability to comply with the order requiring such improvement is not questioned. Having con-

constructed and maintained a platform and a side track for the receipt and delivery of freight and passengers at the village of Farmer, the question is not whether a railroad company may be compeled to build a depot and stop its trains at a place where no station has been established. A station, says Bouvier, is "a place where railroad trains regularly come to a stand for the convenience of passengers, taking in fuel, discharging freight, or the like," and, as thus defined, Farmer is shown clearly to be one of appellant's stations, the gross receipts of which in the way of earnings amount to $10,000 annually, and where the ordinary lines of business are represented as follows: "One general store, one blacksmith shop, one livery barn, one machinery firm, one hardware, one saloon, two grain elevators and coal sheds, stock shippers, and other enterprises waiting for a depot." Section 2 of Chapter 110 of the Laws of 1897 provides that: "The railroad commissioners shall have the general supervision of all railroads in the state, * * * and shall from time to time carefully examine and inspect the condition of each railroad in this state and of its equipment, and the manner of its conduct and management, with reference to the public safety and convenience. * * * Whenever, in the judgment of the railroad commissioners, * * * any addition to or change of its stations or station houses * * * is reasonable and expedient in order to promote the security, convenience, and accommodation of the public, said railroad commissioners shall inform such railroad corporations of the improvements and changes which they adjudge to be proper by notice thereof in writing, * * * and a report of the proceedings shall be included in the annual report of the commissioners to the legislature." Counsel for ap-

pellant with much ingenuity maintains that the provisions of this statute are advisory merely, and designed only to authorize the commissioners to gather information, to notify railroad companies of what changes or improvements are deemed proper, and report the same to the legislature. From a cursory examination and isolated view of the section, there appears to be force in the contention, but when considered, as it must be, in its place as a part of a uniform system, it is clear that a most liberal legislative grant of authority has been conferred upon the commissioners, both as to subject matter and the mode of procedure. In order to make effective the statutory "supervision of all railroads in this state," and carry into operation all reasonable recommendations and orders of the board of commissioners, the following was enacted as a part of chapter 110, Laws 1897 (section 16:) "Any person, firm, corporation or association, or any mercantile, agricultural or manufacturing society, or any body politic or municipal organization, complaining of anything done or omitted to be done by any common carrier, * * * may apply to said commissioners by petition, which * * * shall be forwarded by said commissioners to such common carrier, who shall be called upon to satisfy the complaint, or to answer the same in writing within a reasonable time to be specified by the commissioners. * * * If such common carrier shall not satisfy the complaint, within the time specified, or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of said commissioners to investigate the matter complained of by such means as said commissioners shall deem proper." Section 17: "Whenever an investigation shall be made by said commissioners after notice as provided by section

16 of this act, it shall be their duty to make a report in writing in respect thereto, which shall include the findings of fact upon which the conclusions of the commissioners are based, together with its or their recommendations or orders as to what reparation if any, should be made by the common carrier to any party or parties who may have been found to be injured; and such findings so made, shall thereafter in all judicial proceedings be deemed and taken as *prima facie* evidence as to each and every fact found.     All reports of investigations made by said commissioners shall be furnished to the party who may have complained, or any other person or persons directly interested, and to any common carrier that may have been complained of." Section 19:    "Whenever any common carrier as defined in and subject to the provisions of this act shall violate or refuse or neglect to obey any lawful order or requirement of the said board of railway commissioners, it shall be the duty of said commission and lawful for any company or person interested in such order or requirement, to apply in a summary way,  by petition to the circuit court in any county of this state in which the common carrier complained of has its principal office, or in any county through which its line of road passes or is operated, or in which the violation or disobedience of such order or requirement may happen, alleging such violation or disobedience as the case may be; and the said court shall have power to hear and determine the matter, on such short notice to the common carrier, his or its officers, agents or servants in such manner as the court shall direct and said court shall proceed to hear and determine the matter speedily as a court of equity, and without the formal pleadings and proceedings applicable to ordinary suits in equity, but in such manner as to do justice in the premises.    *   *   *"

Independently of any specific statutory requirement, the duty of providing suitable station houses is so intimately connected with the common welfare that a modern author vigorously adopts the view that under every railroad charter or enabling statute there is an implied obligation on the part of the company to provide and maintain a suitable depot at every station where public interest demands it. 6 Thomp. Corp. 7828. Public utility is the consideration for the right of eminent domain, and in a certain sense partial compensation for the taking of private property for railway purposes. No such power is ever given to purely private corporations, nor to individuals; and, while a railroad is private property, it is also a common carrier of freight and passengers, a public highway depending upon and devoted to the use of the public. In State v Hartford & N. H. R. Co. 29 Conn. 538, the court say, "All jurists and judges will at once agree that chartered companies are obliged fairly and fully to carry out the objects for which they are created," and, in the absence of legislation, it was held both in Illinois and Nebraska that the duty of erecting and maintaining suitable warehouses or depots at all appropriate points upon a railway line rests upon and is enforceable under the principles of the common law. People v. Chicago & A. R. Co., 130 Ill. 175, 22 N. E. 857; State v. Republican Val. R. Co., 17 Neb. 647, 24 N. W. 329. In sustaining the authority of the railroad commissioners to require the erection and maintenance of a depot for freight and passengers, under a statute less specific than our own, the court in Railroad Com'rs v. Portland & O. C. R. Co., 63 Me. 269, takes occasion to say: "While, therefore, we are by no means of the opinion that the public would have been without remedy in respect to the grievance complained of

through the supreme judicial tribunal of the state, if the act of 1871 had not been passed, we see nothing in the act that conflicts with the rights of the corporation represented by the defendant.." The foregoing cases are cited to the point that the existence of a right implies the existence of a remedy, and, if no specific remedy be provided, the courts will enforce the right by appropriate remedy, either at law or in equity. However the grant of authority to the commissioners of this state, by which they are required to take upon themselves "the general supervision of all railroads in the state," and authorized in the due course of law to make the order complained of, subject to judicial review, upon notice as to its being reasonable, imposes upon the appellant an imperative duty. We are therefore not called upon to resort to the doctrine invoked by the above-mentioned courts whose decisions we mention for the purpose of showing that a liberal construction of statutes designed to carry into effect the will of the legislature with reference to the subject is fully justified.

It is further contended by counsel for appellant that the power to order a station house to be built cannot be inferred from the right to adjudge proper "any addition to or change of its stations or station houses," but to us it seems reasonably plain that the building of a depot is as clearly an addition to the station as an enlargement of the station grounds or extension of side tracks. For the reasons above stated, the order appealed from is affirmed.

HANEY, J., concurs in the result upon the ground that under existing statutes it is defendant's duty, regardless of the action taken by the commissioners, to provide a suitable station house at the station established by itself.