S. J. AANDAHL, Chas. W. Bleick, and M. P. Johnson, as the Board of Railroad Commissioners of the State of North Dakota, Respondents, v. GREAT NORTHERN RAILWAY COMPANY, Appellant.

(171 N. W. 628.)

**Railroads — powers of Board of Railroad Commissioners — stations.**

1. The Board of Railroad Commissioners have no general or inherent powers authorizing them to require railroad companies to establish stations at places not possessing the requisites described in the statutes.

**Railroads — statutes — establishment of stations.**

2. Section 4656 of the Compiled Laws of 1913 does not authorize the establishment of a new station within 5 miles of another station established in this state.

**Railroads — stopping places — powers of Board of Railroad Commissioners.**

3. Where a railroad company establishes a stopping place for receiving and discharging passengers, the Railroad Commissioners have authority to require the construction and maintenance of a platform and building sufficient for the accommodation of such traffic.

**Railroads — evidence — stopping places.**

4. *Held*, by a majority of the court, that the evidence in the instant case is insufficient to show that a stopping place has been established and advertised by the railroad company.

Opinion filed January 11, 1919. Rehearing denied February 26, 1919.

Appeal from the District Court of McKenzie County, *Fisk*, J. Reversed.

Statement by BIRDZELL, J. This is an appeal from a judgment entered in the district court of McKenzie county, under which the defendant and appellant is compelled to construct and maintain a plat-

NOTE.—That it is within the power of the Board of Railway Commissioners to compel the establishment of a railway station or the stoppage of trains where the needs of the public require it will be seen by an examination of notes in 17 L.R.A. (N.S.) 821; 29 L.R.A.(N.S.) 159; 44 L.R.A.(N.S.) 478, on power to compel establishment of stations, or the stopping of trains at stations.

41 N. D.—37.

form and station within the village of East Fairview, North Dakota, sufficient to care for such passengers as may take the train at that place. The proceedings were initiated by a petition signed by residents of the village of East Fairview and addressed to the Board of Railroad Commissioners, asking that the appellant railroad company be required to erect a depot and install an agent at such place. It appears that a hearing was held by the Board of Railroad Commissioners, at the conclusion of which an order was entered requiring the construction and maintenance of a platform and building for the convenience of passengers. From this order an appeal was perfected to the district court and a trial was subsequently had, resulting in the judgment above referred to.

The findings of fact made by the trial court are to the effect that the village of East Fairview is incorporated and contains a population of 285 persons and property of the assessed value of $60,000; that there are located in such village various business enterprises, including two banks, three elevators, flour mill, stockyards, livery barn, garage, implement business, Standard Oil Company station, Jennison Milling Company plant, offices, and numerous other business institutions, and a Consolidated Public School; and further that the village is a trading point and shipping point for a large tributary agricultural country, most of which is within an irrigation project. That during the year preceding the order made by the Railroad Commissioners the freight receipts properly apportionable to the village exceeded the sum of $32,000; that there are several tracks of the Great Northern Railway Company, consisting of the main line of the Snowdon-Fairview line and the main line from Fairview to Watford City, and various industrial tracks intersecting the village. That there is no depot, station, platform, or other stopping place in East Fairview, or tributary thereto, in North Dakota. That the railroad business in connection with the East Fairview vicinity is transacted at the station and depot at Fairview, Montana, the depot being located 3,370 feet south and west from the central part of East Fairview village. That the trains of the defendant company pass through the village of East Fairview without stopping except for switching purposes; that there is no station in North Dakota within approximately 5 miles of the village of East Fairview; that the village of East Fairview has been recognized by the defendant company in its rate schedules, passenger schedules, and other operations as

a point from which and to which freight could be consigned and delivered, and that public necessity requires the construction of the building and platform referred to. The foregoing constitutes a sufficient statement of the facts upon this appeal.

*Murphy & Toner,* for appellant.

At common law the legislatures and courts of equity had certain powers of regulations over railroads based either on charter provisions or the police power. State v. R. Co. 92 Pac. 606; Chicago etc. v. Minnesota, 134 U. S. 418.

Neither judicial power nor legislative power can be delegated to the Railroad Commission. Louisville etc. v. R. R. Commissioners, 19 Fed. 679; R. R. Commissioners v. R. Co. 27 Sup. Ct. Rep. 90; N. P. R. Co. v. Washington, 142 U. S. 492; Atlantic etc. Co. v. Wilmington R. Co. 111 N. C. 463; R. Commissioners v. Oregon R. Co. 19 Pac. 702; State v. Atlantic etc. R. Co. 40 So. 875; 2 Elliott, Railroads, § 682; Re Pacific R. Commission, 32 Fed. 241; Eastern R. Co. v. Concord R. Co. 47 N. H. 108; State v. Chicago etc. (S. D.) 94 N. W. 406.

The jurisdiction of a statutory tribunal such as the Commission will not be extended by implication. Re Beckman Street, 20 Johns. 269; Thatcher v. Powell, 6 Wheat. 119; Kansas etc. R. o. v. Campbell, 62 Mo. 585.

No authority existed at common law to compel a railroad to build stations or install agents. N. P. R. Co. v. Washington, 142 U. S. 492; Atchison etc. R. Co. v. Denver etc. R. Co. 110 U. S. 667; People v. New York, 104 N. Y. 58; Southeastern R. Co. v. Commissioners, L. R. 6 Q. B. Div. 586; R. Commissioners v. Oregon; State v. Atlantic etc. R. Co. and State v. Chicago etc. supra; Nashville etc. v. State (Ala.) 34 So. 491; State v. Kansas etc. (La.) 25 So. 126; Atlantic etc. v. Wilmington etc. 111 N. C. 463; Chesapeake etc. v. Comm. 54 S. E. 331.

There can be no delegation of power to railroad commissioners. Administrative duties essential for the execution of the law may be delegated. Georgia etc. v. Smith, 70 Ga. 694; State v. Great Northern, 111 N. W. 289; State v. Young, 9 N. W. 737; State v. R. Co. 37 N. W. 782; Anderson v. Assurance Co. 60 N. W. 1095, 63 N. W. 241; State v. Copeland, 69 N. W. 27; State v. Johnson, 60 Pac. 1068; State v. Wagener, 80 N. W. 778.

The order of the Commission is not a judgment, and the Commission is not a court. Interstate Commerce Comm. v. Cincinnati, 64 Fed. 98; Telourney v. Jeffersonville, 17 Ind. 169; Wilkins v. State, 113 Ind. 514; Betts v. Dimon, 3 Conn. 107; Re Pacific R. Commission, 32 Fed. 241; State v. New Haven etc. 43 Conn. 351; Chicago etc. v. R. R. Comrs. 38 Ind. App. 439; People v. R. R. Comrs. 158 N. Y. 421; Mississippi R. R. Comm. v. R. Co. 203 U. S. 235; State v. Wilmington etc. 122 N. C. 877; State v. Wilson, 121 N. C. 425.

The order of the Commission must be enforced, if at all, by the courts. R. R. Comrs. v. R. Co. 63 Me. 269; R. R. Comrs. v. R. Co. 71 S. C. 130; Smith v. Chicago, etc. 53 N W. 128; State v. Chicago etc. 58 N. W. 1060; State v. Mo. Pac. 92 Pac. 606; R. Co. v. State, 137 Ala. 439, 34 So. 401; State v. Yazoo, 87 Miss. 679, 40 So. 263; State v. Des Moines, 54 N. W. 461; State v. Chicago etc. 53 N. W. 253.

The courts will not enforce an order that the Commission has not authority to make. Oregon etc. v. Fairchild, 224 U. S. 510; State v. R. Co. (La.) 25 So. 126; Nashville etc. v. State (Ala.) 34 So. 401; State v. Tompkins, 77 N. W. 104; Comp. Laws § 4743; State v. R. R. Comrs. 79 N. W. 510; Northern Pacific v. Washington, 142 U. S. 492.

In the absence of statute to that effect, the order of the Commission does not put the burden upon either party as to the prima facie validity of such order. Oregon etc. v. Fairchild, 224 U. S. 510; State v. R. Co. (La.) 25 So. 126; Nashville etc. v. State (Ala.) 34 So. 401; State v. Tompkins, 77 N. W. 104, Comp. Laws, § 4743; State v. R. R. Comrs. 79 N. W. 510; Northern Pacific v. Washington, 142 U. S. 492; R. R. Comrs. v. R. Co. 203 U. S. 335; Atchison etc. v. Denver, 110 U. S. 667; Maele etc. v. People, 132 Ill. 559, 24 N. E. 643; Chicago etc. v. People, 152 Ill. 230, 38 N. E. 562; Louisiana v. State (Ark.) 121 S. W. 284; State etc. v. Chicago, 94 N. W. 406; Elliott, Railroads, § 682; State v. Des Moines, 54 N. W. 461; State v. Yazoo, 87 Miss. 679, 40 So. 263; 23 Am. & Eng. Enc. Law, 655.

The Commission has no control over interstate traffic. R. Co. v. Blackwell, 244 U. S. 310; R. R. Comrs. v. Illinois (U. S.) 27 Sup. Ct. Rep. 90; Chicago etc. v. State, 238 U. S. 491; Ry. Co. v. Illinois, 163 U. S. 142; Great Northern v. Commission, 238 U. S. 340; Stone v. Farmers Trust Co. 116 U. S. 307; Charleston v. Furniture Co. 237

U. S. 597; Chicago etc. v. Minnesota, 134 U. S. 418; Mississippi R. Com. v. Illinois etc. 203 U. S. 335; Mobile etc. v. Sessions, 28 Fed. 592.

The order of the Commission is an interference with interstate traffic, and deprives appellant of property without due process of law. State v. Kaster, 168 Pac. 838; Chicago etc. Ry. Co. v. R. R. Comrs. 237 U. S. 226.

East Fairview does not come within the terms of § 4656, Comp. Laws 1913. Ricker v. Portland, 90 Me. 395, 38 Atl. 338; Gaycon v. R. Co. Grant, Ch. (U. C.) 62; Caldwell's Case, 19 Wall. 264; State v. R. Co. 18 L.R.A. 502; Southern etc. Co. v. N. A. Land Co. 50 Fed. 26.

*William Langer*, Attorney General, *Edw. B. Cox*, Assistant Attorney General, and *Wm. G. Owens*, State's Attorney, for respondents.

*Geo. F. Schafer* and *Palmer, Craven, & Burns*, for petitioners.

The findings and orders of the Railroad Commission are prima facie right and just and have been authorized by law. Comp. Laws 1913, § 4741; Mpls. St. Paul, etc. R. R. Co. v. R. R. Comm. (Wis.) 17 L.R.A.(N.S.) 821 and note, 116 N. W. 905; Louisiana R. R. Co. v. Railroad Commission, 121 La. 855, 46 So. 994; St. Louis R. R. Co. v. Bellamy (Ark.) L.R.A.1915D, 96. Also see note in L.R.A.1915D, 100, 101.

Even when the installing of a depot may be unprofitable, its installation may be lawfully required when public necessity demands it. Chicago R. I. R. R. Co. v. Nebraska Railroad Commission, 26 L.R.A. (N.S.) 444, 124 N. W. 472.

BIRDZELL, J. (after stating the facts as above). The question presented is one of the power of the Board of Railroad Commissioners to make the order which lies at the foundation of the judgment of the district court. The existence of this power is dependent upon the statutes which prescribe the powers and duties of the commissioners of railroads. Its seems to be practically conceded that there is no statute which contains a specific authorization in express terms. Section 589, Compiled Laws of 1913, vests in the Railroad Commissioners general supervision over all railways, etc., and authorizes them to inquire into any neglect or violation of the laws of the state; also to carefully inspect "as provided by law" the condition of each railroad and its equipment, and the manner of its conduct and management,

with reference to public safety and convenience. Section 4713, Compiled Laws of 1913, recognizes the right of city, village, and township authorities to complain to the Board of Railroad Commissioners with reference to rates and the "condition or operation" of any railroad, and recognizes the right of the legal voters to petition the local authorities to make complaint and application to the board, in response to which the commissioners are authorized to adjudicate the matter and report to the governor. Section 4715 makes it the duty of railroads to furnish, start, and run cars for the transportation of persons and property, when offered for transportation "at any of its stations on its line of road, and at the junctions of other railroads, and at such stopping places as may be established for receiving and discharging passengers and freights; and requires that they "shall take, receive, transport, and discharge such passengers and property at, from, and to such stations, junctions, and places on and from all trains advertised to stop at the same for passengers and freight respectively. . . ." Section 4656 requires every railroad to "build and maintain a station house and keep a station agent twelve months each year when so ordered by the Railroad Commissioners at all of its sidings where there is grain and merchandise of any description to be shipped, when the outgoing and incoming freight, and all other receipts at said stations, amount to $12,000 or more in any one year. Provided, that said stations are not less distant than 5 miles apart upon the same line of railway." The record in the instant case is in one respect quite peculiar. There is an abundance of testimony going to establish the freight receipts properly apportionable to the village of East Fairview and also testimony to the effect that the principal shippers of freight in East Fairview are given the advantage of intrastate rates in North Dakota upon such intrastate shipments as they make. For this purpose the place of origin of the freight is considered to be East Fairview, North Dakota, and not Fairview, Montana, where the billing is done. There is no testimony touching the passenger rates or the handling of passenger traffic at East Fairview, save the statement at various places in the record to the effect that passengers frequently get on and off the trains at East Fairview while they are stopped there for other purposes than receiving and discharging passengers in the regular way. Yet, neither the order of the Railroad Commissioners nor the judgment of the dis-

trict court attempts to compel the railroad company to provide any additional facilities for the handling of freight, the order and judgment being limited entirely to the duty to erect a platform and building for the accommodation of such passengers as might desire to get on and off trains at East Fairview. It is clear that the judgment is not founded upon § 4656; for, as before stated, it does not require any alteration in the existing method of handling the freight traffic at East Fairview. It is equally clear that, while § 4713 seems to recognize the municipal corporation as a unit in initiating investigations by the Board of Railroad Commissioners, this section deals primarily with rates and with the "condition and operation" of railroads affecting the complaining municipality. While it does not provide any specific remedy to be applied by the board, it is doubtless contemplated that the power to adjudicate the complaint shall carry with it the power to direct the employment of reasonable means to remedy the situation complained of, if the necessity is determined to exist. But, as we view this section, it would not authorize the Railroad Commissioners to establish stations where none were provided before, nor could the Commissioners, acting under this section alone, require the outlay by carriers of considerable sums of money in locating, building, and maintaining new stations. We are also of the opinion that § 589, which describes in broad language the powers and duties of the board, cannot be construed as authorizing orders requiring the establishment of new stations. Section 4715, however, specifically makes it the duty of every common carrier to furnish, start, and run cars for the transportation of persons offering themselves for transportation at any of its stations and at such stopping places as may be established for receiving and discharging passengers, and it requires that they shall take, receive, transport, and discharge such passengers from and to such stations and places from all trains advertised to stop at the same for passengers.

Exhibit 1 in this case is a folder, such as is generally issued by railroad companies, containing the local time-tables upon the lines of the appellant company. Time-table No. 146 is a schedule of trains on the Snowdon-Fairview-Arnegard and Watford line. In this schedule East Fairview appears as a station at which two of the trains of the appellant, one going each way daily, except Sunday, are advertised to stop, there being five minutes difference in time between East Fairview

and Fairview, a distance of approximately half a mile. The time-table in this respect is the same as in the cases of Grand Forks and East Grand Forks, Fargo, and Moorhead, and Wahpeton and Brecken-ridge, at the eastern boundary of the state, where separate stations are maintained. This exhibit, in connection with the testimony going to establish a more or less well-defined custom of allowing passengers to get on and off trains that stop at East Fairview for other purposes, in the opinion of the writer, and of Mr. Justice Grace, constitutes a sufficient showing of the handling of passenger traffic at East Fairview to make that place a stopping place within § 4715, above quoted. But a majority of the court is of the opinion that the evidence is insufficient to show that any stopping place had been established by the railroad company or recognized by it, other than the regular station established at Fairview. It is conceded by all that this question of fact is, under the record, a close one, the majority being impressed particularly by the fact that there is no evidence that passenger tickets have been sold to and from East Fairview, and that those desiring to get on and off the trains at such point have merely availed themselves of the uncertain opportunity afforded by the stopping of trains there for other purposes. If the fact of the establishment of the stopping place were found to be in accordance with the view of the writer of this opinion, the propriety of the judgment directing the construction of a station house and plat-form for the accommodation of passengers would, of necessity, be tested in the light of the condition thus created by the company itself. The statutory duties, under § 4715, would follow as a matter of course. In view of the ample argument of counsel and of the public nature of the question, we feel warranted in saying that, under this construction, the following considerations would be controlling as to the powers of the Railroad Commissioners: It is one thing to require that a station be established at a point not previously recognized as a station and quite another matter to require the maintenance of suitable facilities for the accommodation of passenger traffic that has its beginning and ending at a definite place. Upon the supposition that the legislature has made it the duty of the railroad company to receive and discharge passengers at East Fairview, the action of the Board of Railroad Com-missioners could not be regarded as going further than necessary to require reasonable accommodations for such traffic. While there is no

statute which, in specific terms, authorizes such an order, we are of the opinion that if the evidence warranted a finding of the existence of a stopping place at East Fairview there is ample authority for the railroad commissioners to make the order in question. Upon the supposition that a definite duty is imposed to supply cars and stop trains for the handling of passenger traffic, the obligations incident to the public calling of the appellant, in the light of the conditions under which its traffic must be handled, are not met unless there be provided such reasonable facilities as will enable the company to handle the traffic in a reasonably safe and convenient manner; and we are of the opinion that the judgment in question goes no further than this, and that it would be amply warranted by §§ 4713 and 4715 of the Compiled Laws of 1913.

There is even respectable authority for the proposition that the courts possess inherent power to require those engaged in public callings to respect the obligations incident thereto, even where the legislature has not imposed a positive duty and even where duties of similar character are imposed by a statute not applicable to the particular situation. See People ex rel. Hunt v. Chicago & A. R. Co. 130 Ill. 175, 22 N. E. 857. A somewhat similar principle was applied in State v. Hartford & N. H. R. Co. 29 Conn. 538; Railroad Comrs. v. Portland & O. C. R. Co. 63 Me. 369, 18 Am. Rep. 208; State ex rel. Mattoon v. Republican Valley R. Co. 17 Neb. 647, 52 Am. Rep. 424, 24 N. W. 329, also reported upon rehearing in 18 Neb. 512, 26 N. W. 205; Concord & M. R. Co. v. Boston & M. R. Co. 67 N. H. 464, 41 Atl. 263; State ex rel. Tompkins v. Chicago, St. P. M. &. O. R. Co. 12 S. D. 305, 47 L.R.A. 569, 81 N. W. 503. But since our legislature has seen fit to enact legislation which seems to be quite comprehensive, embracing the major duties attaching to the operation of railroads in this state, we do not feel called upon to express our adherence to a doctrine as broad as was applied in some of the foregoing cases. The regulation of railroads is primarily a legislative function; and where the legislature has attempted to exercise its powers to the extent that it has in this state, we are of the opinion that it is only in exceptional cases a court would be warranted in exercising its inherent powers through mandamus. The fact, however, of the existence of such a power indicates the necessity of giving a reasonable construction to the regulatory

and supervisory statutes vesting general supervision in the administrative agencies created by the Constitution, to the end that specific duties attaching to the particular calling, and which are imposed by the legislature, shall be discharged in a reasonable manner, viewed from the standpoint of public safety and convenience.

We have examined the cases of Atchison, T. & S. F. R. Co. v. Denver & N. O. R. Co. 110 U. S. 667, 28 L. ed. 291, 4 Sup. Ct. Rep. 185; Northern P. R. Co. v. Washington Territory, 142 U. S. 492, 35 L. ed. 1092, 12 Sup. Ct. Rep. 283; People v. New York, L. E. & W. R. Co. 58 Am. Rep. 484, 104 N. Y. 58, 9 N. E. 856; Nashville, C. & St. L. R. Co. v. State, 137 Ala. 439, 34 So. 401; and State ex rel. Smart v. Kansas City, S. & G. R. Co. 51 La. 200, 25 So. 126. While these authorities are not consistent with the holdings in Connecticut, Maine, Nebraska, New Hampshire, and South Dakota, in the cases hereinbefore referred to, they cannot be regarded as direct authorities, where the duty sought to be enforced is one which is fairly to be inferred from the statutes. These authorities point only to the necessity of there being legislative authority for such an order as the one in question.

According to the view of the majority of the court, no stopping place having been established at East Fairview, no duties devolve upon the railroad company to provide passenger facilities at that point, and there being no statute upon which the order and judgment can be based, the judgment appealed from must be reversed. It is so ordered.

Bronson, J., being disqualified, did not participate, Honorable W. L. Nuessle, Judge of Sixth Judicial District, sitting in his stead.

Robinson, J. This is an appeal from an order of the district court in accordance with an order of the Railroad Commissioners which is that the railway company must construct and maintain at East Fairview a platform and passenger depot. As appears, East Fairview is on the east side of the Montana line, and Fairview is just on the other side. The villages are separated only by the imaginary line. The distance from the center of one village to the center of the other is a quarter of a mile; from the center of East Fairview to the depot is about ⅝ of a mile, because the depot is well to the west of Fairview so as not to impede traffic and to give the trains a good starting place.

Now East Fairview is $4\frac{1}{2}$ miles west from Cartwright and $\frac{5}{8}$ of a mile east from the depot. It has a few business houses, a schoolhouse, but no postoffice. Its population is less than 300; that of Fairview is over 900. In time the two villages may become cities and be united as greater New York. The company shows that the cost of a platform and a depot would amount to $3,000 and the cost of maintenance $200 a month, and that a loss and detriment to the railway company and the public would result from the construction of a railway station and the stopping of trains at such short distances as a half mile or $\frac{5}{8}$ of a mile.

There is nothing except the state line to obstruct the transit from one village to the other, or to prevent the two villages from becoming a greater New York. Yet, it is claimed that each village should be given the same railway facilities as St. Louis and East St. Louis, Kansas City and West Kansas City, Omaha and Council Bluffs, Fargo and Moorhead, Grand Forks and East Grand Forks, Bismarck and Mandan. Yet we should remember that even in these big cities many people have to go $\frac{5}{8}$ of a mile to the railway depot, and many people do not like to have a railway station in the back alley or in very close proximity. Doubtless it was for that reason, as well as for the high ground, that the railway station was put $\frac{3}{8}$ of a mile from the business center of those villages, and to give them a better chance to grow westward.

But, waiving the humor of the question and leaving jokes aside, it does seem quite funny and ridiculous for a little place with but two or three score families to insist on having a railway station and a depot built and maintained for their special accommodation when they have a good depot, at the most, within a half or $\frac{5}{8}$ of a mile. Of course the order must be reversed.