THE STATE OF FLORIDA EX REL. W. H. ELLIS, AS ATTORNEY GENERAL, RELATOR, V. ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, RESPONDENT.

1. The common law writ of mandamus may be issued to specifically enforce the performance of a duty imposed by law upon a railroad corporation where no other adequate remedy is provided by law.

2. The writ of mandamus does not supersede legal remedies, but rather supplies the want of a legal remedy, therefore two prerequisites must exist to warrant a court in granting this extraordinary remedy: first, it must appear that the relator has a clear, legal right to the performance of the particular duty by the respondent; and, second, that the law affords no other adequate or specific remedy to secure the performance of the duty which it is sought to coerce.

3. When a state confers upon a railroad corporation the rights of a common carrier, the law imposes upon such corporation the duty of providing all facilities and of operating them so as to adequately meet all reasonable requirements of the service it engages to render. This duty is implied by law in conferring the franchise and privileges of a common carrier or in permitting their use, whether the provisions of the grants be mandatory or merely permissive; and the acceptance or exercise of the rights carries with it the duty of properly rendering the public service undertaken by virtue of the rights conferred or permitted to be exercised.

4. The power and duty of a state to require the property of a common carrier corporation devoted to the public service within its borders to be maintained in a reasonably safe and adequate condition, and to be properly operated for rendering the public service to which the property is devoted by its corporate owner, are inherent and reserved

State ex rel. Ellis v. A. C. L. R. R. Co.—Syllabus.

in the state for the necessary protection and benefit of the lives and property within its territory.

5.  Whether or not the property devoted by a common carrier railroad corporation to the public service which it is authorized to perform, is adequate, and is being operated in a reasonably safe and convenient manner for the proper rendering of such public service, may be determined by the courts when the question is duly presented by the state through its proper official representative; and in determining the question, any legal method of ascertaining the material and essential facts may be adopted which is best suited to the case.

6.  In determining whether the roadbed, track, rolling stock and other equipment of a common carrier railroad corporation is reasonably sufficient, and is being maintained and operated in a reasonably safe and adequate condition, and is being managed for the proper rendering of the public service that the corporation has undertaken to perform, the conditions under which the service is being rendered, the character and extent of the service, its reasonable requirements, and the means, facilities and methods best suited to such service in common use, will be considered by the court, together with any other material and pertinent matters available.

7.  The duty of providing a reasonably safe and sufficient roadbed, track, equipment and facilities, and of maintaining and operating the property in a proper condition for rendering safe, prompt and adequate service and of actually rendering to the public such service without unjust discrimination, being required for the public good and contemplated by law, and imposed upon a common carrier railroad corporation in permitting it to exercise the franchises and privileges of a common carrier, may be enforced by mandamus in a proper case upon the relation of the attorney general when no other dequate remedy is provided by law.

8.  While a discretion is allowed a common carrier corporation in the means and manner of the discharge of the duties it owes to the public, such discretion must be exercised in good faith and with reasonable regard for the requirements of the public service. When all the necessary facilities are furnished and operated so as to reasonably meet the just requirements of the public service the law in that regard is satisfied.

9   The mandatory part of a writ of mandamus should conform to the allegations of the writ and it should not in general require more to be done than is justified by the allegations of the writ. Where the mandatory part of the writ, taken with its allegtions, is not so definite and specific that its performance can be readily enforced by the court, a peremptory writ will not be issued.

10.  When it is sought by mandamus to compel a railroad company to do any act in relation to the equipment and operation of its road, the courts, as a general rule, will not interfere except where the act sought to be enforced is specific.

11.  The roadbed and track of a railroad have the elements of stability, and it can be readily ascertained when they are put in the condition required by specific allegations and commands in mandamus proceedings. But in the nature of things there can be no fixed standard for the number of engines and cars that will be sufficient to move the traffic along the different lines of a railroad company, as the requirements of the service may greatly and rapidly fluctuate from time to time. A large discretion in such cases must be left to the management of the road and the supervision of the state tribunal charged with that duty.

12.  The proceedings by mandamus can only be resorted to when there is no other adequate legal remedy to accomplish the purpose sought thereby.

13. When the court will not enforce the mandate of an alternative writ as it is framed, a peremptory writ will not issue thereon, since the writ must be enforced as a whole if at all.

14. An alternative writ of mandamus may be amended.

This case was decided by the Court En Blanc.

This is a Case of Original Jurisdiction.

### STATEMENT.

The alternative writ issued in this case January 11th, 1907, upon a petition filed by the attorney general, is as follows:

"The State of Florida

To the Atlantic Coast Line Railroad Company.

Whereas, by a petition filed in this court in the name of the state of Florida upon the relation of W. H. Ellis, as attorney general of said state, it has been made to appear:

1st. That the Atlantic Coast Line Railroad Company is a railroad corporation, doing business under the laws of the state of Florida, in said state, and is in possession of, controls and pretends to operate certain lines of railroad lying wholly in the state of Florida, to wit: A line of railroad from Palatka, in Putnam county, to Rochelle, in Alachua county, thence to Ocala in Marion county, thence to Leesburg in Lake county, and to Brooksville in Hernando county; and from Croom in Hernando county, to St. Petersburg in Hillsborough county, and from Bartow in Polk county, to Punta Gorda, in DeSoto county; also a line of railroad from Ocala in Marion county via Dunnellon in said county, and from Gulf Junc-

tion in Citrus county to Croom in Hernando county, and from Trilby in Pasco county to Bartow in Polk county.

2nd.    That the line of railroad aforesaid from Palatka to Rochelle, thence to Ocala, thence to Leesburg and Brooksville, and from Bartow to Punta Gorda was constructed and built under and by virtue of a charter granted by the state of Florida to the *Gainesville, Ocala & Charlotte Harbor Railroad Company*, to which said railroad company the state of Florida, by chapter 3167 of the laws of 1879, approved March 4th, 1879, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporatin received from the state of Florida, pursuant to said land grant, two million six hundred and twenty-two thousand three hundred and sixty-two and forty-five one-hundredths (2,622,-362.45) acres of land.

3rd.    That the line of railroad aforesaid beginning at Ocala in Marion county and running via Dunnellon and Gulf Junction to Homosassa in Citrus county, and from Gulf Junction to Inverness in said county, was constructed and built under and by virtue of a charter granted by the state of Florida to the *Silver Springs, Ocala & Gulf Railroad Company*, to which said railroad company the state of Florida, by chapter 3170 of the laws of 1879. approved March 12th, 1879, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant three hundred and thirty-nine thousand eight hundred and seven and fourteen one-hundredths (339,807.14) acres of land.

4th.    That the line of railroad aforesaid from Inver-

ness in Citrus county to Croom in Hernando county, and thence to Trilby in Pasco county and thence to Bartow in Polk county, was constructed and built under and by virtue of a charter granted by the state of Florida to the *South Florida Railroad Company,* to which said railroad company the state of Florida, by chapter 3491 of the laws of 1883, approved March 5th, 1883, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, sixty-five thousand one hundred and ninety-two and seven one-hundredths (65,192.07) acres of land.

5th. That the line of railroad aforesaid from Trilby, in Pasco county to St. Petersburg in Hillsborough county was constructed and built under and by virtue of a charter granted by the state of Florida to the *Orange Belt Railroad Company,* to which said railroad company the state of Florida granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, eighty-eight thousand six hundred and eighty-seven and ninety-two one-hundredths (88,687.92) acres of land.

6th. That afterwards by various purchases, transfers, assignments, mergers and consolidations the said Atlantic Coast Line Railroad Company acquired all the franchises, properties and lines of railroad as hereinbefore described of the said raiload companies, and came into the actual possession thereof, and is now pretending to operate said lines of railroad as a common carrier, and thereby became and was obligated to the state of Florida

to maintain and operate the said lines of railroad as a common carrier, and faithfully to perform the public trust imposed upon and accepted by it, that is to say: the said Atlantic Coast Line Railroad Company by reason of the foregoing facts is obligated unto the state of Florida to accept and receive, transport and deliver with reasonable safety and dispatch all freight offered to it along said lines of railroad, proper to be transported by a common carrier in this state, and to furnish ample facilities for receiving, transporting and delivering the same in the manner aforesaid at the reasonable tariff and charges adopted by said corporation and then in force; and to transport with reasonable safety and dispatch all passengers over said lines of railroads and to provide reasonably safe and convenient facilities therefor. But the state of Florida, by the said W. H. Ellis, as attorney general of said state, avers and informs your honors that the said Atlantic Coast Line Railroad Company, through its officers, agents, employees and servants, has, since the 1st day of October, A. D. 1905, failed, and is now failing in the performance of its said public duty along and over the lines of railroad above described and to perform the public trusts conferred upon it as aforesaid and accepted by it as above set forth, to the wrong, injury and great inconvenience of the public, that is to say:

7th. The said Atlantic Coast Line Railroad Company has failed and is failing to supply and furnish flat and box cars in sufficient numbers to load the freights actually offered and being offered to it for transportation over the lines of railroad above mentioned, although it has been repeatedly requested and urged so to do by divers persons owning and being interested in and having large quantities of freight to be transported over the

lines of railroad afore mentioned, and such failure by said company to supply and furnish such flat and box cars has resulted and is resulting in great pecuniary loss and damage to the owners of such freight and property so offered for transportation as aforesaid, and in great injury to the industries of the country and to the wrong and injury of the public generally.

8th. The said Atlantic Coast Line Railroad Company has failed and is failing to transport and carry with reasonable dispatch and safety freights which have been received by it for transportation over said lines of railroad, after the same have been actually received by the said Atlantic Coast Line Railroad Company for transportation over said lines of railroads, and such failure of the said Atlantic Coast Line Railroad Company to perform and discharge its duties in this regard has resulted and is resulting in great pecuniary loss and damage to the owners of such freight and property so received by the said company for transportation as aforesaid, and in great injury to the industries of the country, and to the wrong and injury of the public generally.

9th. The said Atlantic Coast Line Railroad Company has failed and is failing to deliver at the proper destination and with reasonable dispatch and safety, freights which have been received and accepted by it for transportation over the said lines of railroad, and to provide adequate and sufficient terminals for forwarding and delivering to connecting lines of railroad and common carriers freights received by the said Atlantic Coast Line Railroad Company, at, upon and along the lines of railroad hereinbefore mentioned, and by such failure to perform its duty in this particular the said Atlantic Coast Line Railroad Company has been and is now evading

42—S C

and shirking the duties it owes to the state and the general public, in subjecting the public to great inconvenience and annoyance, in injuring and destroying the industries of the country and is defeating the purposes and objects of its own creation.

10th.    The said Atlantic Coast Line Railroad Company has carelessly and negligently, and in violation of its duty to the state and the public, failed and is failing to keep its roadbed and track in good repair and in fit and suitable condition for the proper transportation of freight over its said lines of railroad and the safe movement of its equipment thereon; that it has allowed and is allowing its road bed and track to run down and become unfit and unsuitable for the proper movement of its equipment thereon and the transportation of freight thereover; that said track in its present condition is a danger and menace to the lives and limbs of the passengers on said railroad; that said road bed and track of the said lines of railroad contain heavy grades and great curvatures on the main lines; the rails are light and insufficient in size and weight, a large percentage of the crossties under said rails are rotten and wholly incapable of supporting the rails with the weight of an empty car thereon.    At divers places along said lines and for great distances the iron spikes which are driven into the crossties to support the rails, can be lifted from the crossties with the naked hand; that many of the angle bars or plates on the main lines, and bolts used in the same, are broken, and that on account of the unsafe, dangerous and bad condition of the track as aforesaid numerous casualties have recently occurred upon said lines of railroad, resulting in the destruction of human life and great waste and damage to property.

11th.   That the said Atlantic Coast Line Railroad Company has negligently and carelessly, and in violation of its duty to the state and the public, failed and is failing to provide sufficient motive power for the proper handling of its cars and freights and passenger traffic over the said lines of railroad; it has failed and is failing to provide sufficient shop and round-house facilities for the proper overhauling and repairment of its cars and locomotive engines and other equipment used upon said lines of railroad; that it has negligently failed and is failing to employ a sufficient number of machinists and carpenters to keep the tracks and equipment in good repair and suitable and fit condition; that it retains in its service many employees and servants who are incapable and negligent of their duties, so that the yards at junctional and terminal points alone the lines of railroad aforementioned have become and remain congested, and the movement of cars containing freights received at points along the said lines of railroad, and freights received by the Atlantic Coast Line Railroad Company at other places for delivery within the state of Florida, and upon the lines of railroad mentioned, is greatly hindered and delayed, and the business and industry of the country greatly injured and impaired.

12th.   All of which failures and omissions on the part of the Atlantic Coast Line Railroad Company to perform and discharge its duties and obligations to the state of Florida and the public as a common carrier, and to properly operate its railroads above mentioned, has resulted and is resulting in great confusion, inconveniences, hindrances, delays and injury to the public generally in the state of Florida.

13th.   That the state of Florida, by W. H. Ellis, as

attorney general of said state, further shows unto and informs your honors that the people of the state of Florida are entirely without remedy in the premises unless it be afforded by the interposition of this honorable court through a writ of mandamus:

Now, therefore, we, being willing that full and speedy justice be done in the premises, do command you, the Atlantic Coast Line Railway Company, to forthwith repair and put in reasonably safe and suitable condition your roadbed and track over and along the line of railroad from Palatka in Putnam county to Rochelle in Alachua county, thence to Ocala in Marion county, thense to Leesburg in Lake county and to Brooksville in Hernando county; and from Croom in Hernando county to St. Petersburg in Hillsborough county, and from Bartow in Polk county to Punta Gorda in De Soto county, and from Ocala in Marion county via Dunnellon in said county to Gulf Junction in Citrus county, and from thence to Homasassa in said county, and from Gulf Junction in Citrus county to Croom in Hernando county, and from Trilby in Pasco county to Bartow in Polk county, to accommodate and transport with reasonable safety and dispatch the traffic offered and being offered to you, the said Atlantic Coast Line Railroad Company, over and along said lines of railroad; and we do further command you, the said Atlantic Coast Line Railroad Company, to furnish for use upon the said lines of railroad flat and box cars in sufficient numbers to receive and load the freights now being offered to you for transportation; and we do further command you, the said Atlantic Coast Line Railroad Company, to furnish locomotive engines in sufficient number, capacity and condition to transport and move the freight and passenger cars to be used

State ex rel. Ellis v. A. C. L. R. R. Co.—Statement of Case.

along your said railroad; and we do further command you, the said Atlantic Coast Line Railroad Company, to receive, transport and deliver with reasonable safety and dispatch all freights offered to you for transportation along said lines of railroad, proper to be carried by railroad corporations in this state, and to deliver with reasonable dispatch the freight accepted by you for transportation over said lines of railroad; or that you appear before the justices of our supreme court sitting within and for the state of Florida, at the court room in the city of Tallahassee, on the 29th day of January, A. D. 1907, at ten o'clock a. m. of said day, and show cause why you refuse to do so, and have you then and there this writ.

Witness, the Honorable THOMAS M. SHACKLEFORD, Chief Justice of the Supreme Court of the state of Florida, and the seal of the said court at Tallahassee, the capital, this 11th day of January, A. D. 1907.

(Seal.) M. H. MABRY,
Clerk Supreme Court, State of Florida."

The respondent filed the following motion to quash: "And now comes the defendant in the above entitled cause and moves the court to quash the alternative writ of mandamus issued therein upon the following grounds, to wit:

1st. The facts alleged in said alternative writ do not constitute a cause of action authorizing the relief prayed for.

2d. The alternative writ fails to show any legal duty resting upon the defendant with which it has failed to comply.

3d. The allegations of fact in said alternative writ

contained are too vague, indefinite and uncertain to be replied to by this respondent.

4th. The said prayer in the said alternative writ contained does not on its face show what acts the defendant must perform so that the court could ascertain that its order has been complied with."

The cause was submitted to the court February 4th, 1907, upon oral arguments and briefs by the attorney general and by counsel for the respondent.

*W. H. Ellis,* attorney general, for relator.

The Atlantic Coast Line Railroad Company is doing the business of a common carrier, its road is a public highway, its business is affected with a public interest.

Common carriage is a public employment.

Beal and Wyman, R. R. R. sections 41, 42.
6 Cyc. P. 366, p. 372—B.
Fish v. Chapman, 2 Ga. 349, 46 Am. Dec. 393.
State *ex rel.* Kohler v. C. B. & B. R. Co., 7. L. R. A. 322, text.

The road is a public highway.

Raleigh & Gaston Ry. v. Davis, 2 Dev. & Bat. 451.
Olcott v. The Supervisors, 16 Wall 678-674 text.
Buckman v. Saratoga R. Co., 3 Paiges R. 45, Aff-in.
Bloodgood v. Mohawk & H. R. Co., 18 Wend. 9, 21 text.
3 Cook on Corporations, section 893.
Worcester v. Western R. Co., 4 Met. 564.
1 Rorer on Railroads, 1 *et seq.*

Newburyport T. Co. v. East R. Co., 23 Pick. 326.
Chapter 1987 Acts 1874 Laws of Florida.
Loan Assn. v. Topeka, 20 Wall 655.
Cotton v. Com. Leon Co., 6 Fla. 610.

All public service corporations are bound by the universally recognized law: that they shall serve all who apply, with adequate facilities for reasonable compensation and without discrimination, and are subject to public regulation.

Munn v. Ill., 94 U. S. 113.
Haugen v. Albina, Etc., Co., 21 Ore. 411.
Olmstead v. Proprietors, 47 N. J. L. 311.
Chicago, Etc., Co. v. People, 56 Ill. 365.
Nebraska Tel. Co. v. State, 55 Neb. 627-634.
Watauga Water Co. v. Wolfe, 99 Tenn. 429.

Railroads and their duties to the public.

Messinger v. Pa. R. R. Co., 36 N. J. 407.
Talcott v. Twp. Pine Grove, 1 Flippin (U. S. Cir-Ct. R.) 144.
People v. N. Y. C. & H. R. R. Co., 28 Hun. 543.
6 Cyc, p. 372.
2 Spelling on Injunctions, Etc., Sec. 1814.
2 Rorer on Railroads, p. 1220.
1 Redfield on Railway, 683, Sec. 3.
A. Branch v. Wilmington, W. R. R., 77 N. C. 347.
People v. Chicago & Alton R., 130 Ill. 175.
State v. Republican Valley R. R., 17 Neb. 647.
Sec. 35, chapter 1897, Acts 1883.
General Statutes, Secs. 2850-2851-2861.

Mandamus is the proper remedy to compel railroads to perform their duty to the public.

People v. N. Y. & H. R. R. R. Co., 28 Hun. 543.

State v. Hartford & N. H. R. R. Co., 29 Conn., 538.

2 Spelling on Injunctions, Etc., Sec. 1594.

Northern Pac. R. R. Co. v. Territory (Wash.) 13 Peters 604.

State *ex rel.* Mattoon v. R. Valley Ry., 22 Am. & Eng. Ry. Cases 500.

3 Cook on Corporations, Secs. 903-904.

People v. Louisville, Etc., R. R.. 120 Ill., 48-64, text.

High's Extraordinary Legal Remedies, Secs. 320, 431.

People v. St. Louis, Alton, Etc., Ry., 35 L. R. A. 656. 656.

State v. Spokane Str. Ry., 41 L. R. A. 515.

Savannah & O. Canal Co. v. Shuman, 91 Ga. 400.

Potwin Place v. Topeka R. Co., 51 Kan. 609.

Talcott v. Pine Grove Twp., 1 Flippin. 145.

State v. Sioux City & P. R. Co., 7 Neb. 357-373, text.

Rex v. Severn & W. R. Co., 7 Eng. Ruling Cases, 445.

People v. C. & A. R. R. Co., 130 Ill. 175.

Merrill on Mand., Secs. 157-8-9.

U. P. Ry. Co. v. Hall, 91 U. S. 343.

Haugen v. Water Co., 128 Pac. Rep. 244.

Ry. Co. v. State, 37 Ind. 489.

State v. Mo. Pac., 33 Kan. 176.

State v. Hannibal, 86 Mo. 17.

State v. San Antonio Ry., 10 Tex. Cir. App. 14.

Moses on Mandamus, 155-157.

Mandamus will lie to compel railroads to replace track which has been torn up.

State ex rel. Ellis v. A. C. L. R. R. Co.—Argument.

State v. Mo. Pac. R. Co., 33 Kan. 176.
Potwin Place v. Topeka R. Co., 51 Kan. 609.
Union Pac. v. Hall, 91 U. S. 343.
Rex v. Severn & W. R. Co., 7 Eng. Ry. Cases 445.
State v. D. C. M. & T. Co., 53 Kan. 329.

When no mandatory charter provision exists requiring the operation of a public system, mandamus will lie to compel the performance of public duties undertaken by the acceptance of a franchise to conduct the business of a common carrier.

People v. N. Y. C. & H. R. R. Co., 28 Hun. 543.
State v. N. H. & H. R. R. Co., 29 Conn. 538.
State v. Spokane Str. Ry. Co., 41 L. R. A. 515.
Farmers Loan & T. Co. v. Herring et al., 8 Fed. Cas. 4666.
People ex rel. v. Col. Cent. R. Co., 42 Fed. 638, text 642.
Potwin Place v. Topeka R. Co., 51 Kan. 609.
State v. Sioux City Ry., 7 Neb. 35.
Bridgton v. Traction Co., 62 N. J. L. 592; 45 L. R. A. 837.
People v. Albany & Vt. R. Co., 24 N. Y. 26.
State v. Republic. Val. R. R., 17 Neb. 647.

Wherever the power is granted by the legislature to do an act, in the execution whereof the public have an interest, the power if accepted implies or creates an obligation, although granted by permissive words only, especially when the power granted includes the exercise of the attributes of sovereignty.

Com. Dig. Parliament, R. 22.
London v. Van Acre, 12 Mod. 271.

Blackmon v. Glamorganshire Canal, 1 Myl & K. 162.
Mason v. Flarson, 9 How. 259.
Ward v. Sea. Ins. Co., 7 Paige 294.
Rex v. Bartow, 2 Salk 609.
9 Bac. Abr. 239.
Livingston v. Tanner, 14 N. Y. 64.
Gilmore v. Utica, 121 N. Y. 569.
Supervisors v. U. S., 4 Well. 446.

Corporations which have received franchises to conduct the business of common carrier and received state aid, may not by their own acts, without the consent of the state, disable themselves from performing the functions which they undertook to perform in consideration of the grant from the state.

Union Pac. R. R. Co. v. Hall, 91 U. S. 343.
Farmers Loan & T. Co. v. Henning, Fed. Cases 4666.
People v. Albany & Vt. R. Co., 24 N. Y. 269.
Potwin Place v. Topeka R. Co., 51 Kan. 609.
Savannah & O. Canal Co. v. Shuman, 91 Ga. 400.
State v. Cen. Iowa R. Co., 71 Iowa 410.

Obligations of succeeding corporations.

1 Rorer on Railways, p. 610.
19 Am. & Eng. Enc. of Law (1st ed.) p. 897.
Chicago v. Evans, 24 Ill. 52.
People ex rel. v. L. & N. R. R. Co., 120 Ill. 48.
2 Redfield on Railways (4th ed.) 277.

Parties.—Attorney general the proper officer to institute proceedingss.

State ex rel. Ellis v. A. C. L. R. R. Co.—Opinion of Court.

People v. Hasley, 34 N. Y. 344.
People v. Collins, 19 Wend. 56.
People v. N. Y. C. & H. R. R. Co., 28 Hun. 543.

Petition need not be verified when filed by attorney general.

*W. E. Kay, Jno. E. Hartridge, R. A. Burford* and *Sparkman & Carter,* for respondent.

WHITFIELD, J.: The attorney general in mandamus proceedings alleges that the respondent railroad company for more than a year has not performed its duty to the public as a common carrier in that its roadbed and track are not maintained in a safe and suitable condition, its motive power and flat and box cars are not sufficient in numbers, and the freights accepted are not transported with safety and dispatch, by reason of which great injury has resulted to the public. The alternative writ commands the performance of this duty.

It is contended on motion to quash the alternative writ that the duty therein alleged is not commanded by statute or by the terms of the charters, and that therefore mandamus is not the proper remedy; and further, that the allegations and commands of the writ are so general, vague and uncertain that they cannot be definitely replied to, performed or enforced.

The alternative writ does not require the performance of specific acts, but in rather broad terms it commands the respondent to perform certain branches or parts of a general duty it owes to the public in rendering the service of a common carrier. The statutes of this state do not enumerate all the duties which a railroad cor-

poration owes to the public. There are, however, certain general duties to the public a railroad company assumes in consideration of its franchises and privileges received from the state, and as a result of its undertaking to render to the public the service of a common carrier. The duty here commanded is implied by law and is binding upon the railroad corporation when it receives and exercises franchises and privileges that can be held and exercised only by legal authority derived from the sovereign power.

The common law writ of mandamus may be issued to specifically enforce the performance of a duty imposed by law upon a railroad corporation where no other adequate remedy is provided by law. The writ of mandamus does not supersede legal remedies, but rather supplies the want of a legal remedy, therefore two prerequisites must exist to warrant a court in granting this extraordinary remedy: First, it must appear that the relator has a clear, legal right to the performance of the particular duty by the respondent; and, second, that the law affords no other adequate or specific remedy to secure the performance of the duty which it is sought to coerce. See High on Ex. Legal Rem. sections 1, 10; Merrill on Mandamus, section 51; People *ex rel.* Bailey v. Supervisors of Green, 12 Barb. (N. Y.) 217; People *ex rel.* Township of LaGrange v. State Treasurer, 24 Mich. 468; State *ex rel.* Hathorn v. United States Express Co., 95 Minn. 442, 104 N. W. Rep. 557; 6 Current Law 499; Ray v. Wilson, 29 Fla. 342, 10 South. Rep. 613, 14 L. R. A. 773; State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225; 6 Bacon's Ab. 418.

In the case of Loraine v. Pittsburg, J., E. & E. R. Co.,

205 Pa. St. 132, 54 Atl. Rep. 580, the court, in awarding mandamus to compel the railroad company to continue to furnish cars that it had been furnishing but had ceased to furnish, said: "The defendant, under the statute from which it derives it being, is a common carrier and as such has imposed upon it certain public duties, such as to construct its road, to equip it with cars, locomotives and employ hands to run them for all the public. This is a public duty. If it fail in performing it, it fails to carry out the very purpose of its charter, and the public, without distinction, suffers by the breach of duty. In such case, both at common law and under our statute of 1893, proceedings should be instituted by the commonwealth at the instance of the attorney general."

"While the law affords railroad corporations adequate and complete protection in the exercise of their chartered rights, it also holds them to a strict performance of the public duties enjoined upon them as a consideration for the rights and powers thus granted." Railroad Commissioners v. Portland & O. C. R. R. Co., 63 Me. 269, 18 Am. Rep. 208.

"The object of incorporating railroad companies is to secure to the public increased facilities for transit from point to point, and an improved mode of carrying persons and property. * * * Railroad companies are creatures of the law, and are intrusted with the exercise of certain powers to promote the public interest, and are therefore bound to conduct their affairs in furtherance of the public objects of their creation." People ex rel. Cantrell v. St. Louis, A. & T. H. R. Co., 176 Ill. 512. 52 N. E. Rep. 292, 35 L. R. A. 656.

"All jurists and judges will at once agree that char-

tered companies are obliged fairly and fully to carry out the objects for which they are created, and that they can be compelled by mandamus to do it; and it will not be question that in the case of public highways, whether turnpikes or railroads, they are bound to keep them fit for use, and, in the case of railroads, to keep them furnished with suitable cars, engines and attendants, without which they cannot be used at all." State v. Hartford & N. Haven R. R. Co., 29 Conn. 538.

"A railroad company is a *quasi* public corporation, and all its rights and powers are conferred upon it not merely for the benefit of the corporation itself, but also in trust for the benefit of the public; and whenever it neglects or fails to perfom any of its corporate duties. it may generally be compelled to perform the same by an action of mandamus. The duty resting upon a railroad corporation to perform whatever has been legally enjoined upon it by legal and proper authority, is a duty resulting from a public trust, and is also a duty resulting from a public station, and the public may through the attorney general enforce the performance of such duty by mandamus, whenever no other plain and adequate remedy exists." State v. Missouri Pac. Ry. Co., 33 Kan. 176, 5 Pac. Rep. 772.

"The duty of a railroad company to carry and charge only reasonable compensation are incidents to its occupation as a common carrier. * * * It is the duty of a common carrier to receive and carry whatever is properly offered to it for carriage. * * * The safety of human life and the good of every public interest require of railroads the soundest condition, the fullest equipment, and most skillful and careful operation; and it is the province

of the court to enforce, when properly called upon, the law which imposes these entirely proper and indispensable demands." Pensacola & A. R. Co. v. State, 25 Fla. 310, 324, 325, 326, 5 South. Rep. 833, 839, 840, 3 L. R. A. 661.

"It must also be remembered that railways are public corporations organized for public purposes, granted valuable franchises and privileges, among which the right to take the private property of a citizen *in invitum* is not the least, *Cherokee Nation v. Southern Kansas Railway Co.,* 135 U. S. 641, 657; that many of them are the donees of large tracts of public lands and of gifts of money by municipal corporations, and that they all primarily owe duties to the public of a higher nature even than that of earning large dividends for their shareholders." United States v. Trans-Missouri Freight Ass'n., 166 U. S. 290, text 332, 17 Sup. Ct. Rep. 540; North Carolina Corporation Commission v. Atlantic Coast Line R. Co., 137 N. C. 1, 49 S. E. Rep. 191.

"It is a well settled doctrine that a corporation may be compelled by a writ of mandamus to perform a duty imposed by statute. The duty need not be express; it may be implied. Clearly, when it appears by fair implication from the terms of the charter, it is as imperative as if the obligation were expressed. But as to corporations *quasi*-public in character, such for example as those chartered for the carriage of passengers and freight, there are decisions which hold that they owe certain duties to the public which they may be compelled to perform, although not enjoined by their charters, either in express terms or by specific implication." San Antonio St. Ry. Co. v. State, 90 Texas 520, text 523, 39 S. W. Rep. 926.

"No better general rule can be laid down upon this sub-

ject than that where the charter of a corporation, or the general statute in force and applicable to the subject, imposes a specific duty, either in terms or by fair and reasonable construction and implication, and there is no other specfic or adequate remedy, the writ of mandamus will be awarded." 1 Redfield on Railways (5th ed.) 678.

"The duty to keep in proper repair a portion of the public highway is a duty to the public and of a *quasi*-official character; and that duty is one that the law itself makes incumbent upon the defendants, and it is for the benefit of the public at large and for the general welfare; and we think it is wholly immaterial that the duty is imposed by a rule of common law, and is not created by some positive and express provisions of a statute, or secured to the public through chartered privileges." Haines v. People, 19 Ill. App. 354.

"A railroad company is bound at common law, independently of any statute, to use at least ordinary diligence in procuring a sufficiency of cars to carry all the freight tendered it, and certainly all that is accepted by it for shipment." Branch v. W. & W. R. Co., 77 N. C. 347.

"There can be no doubt of the duty of a railway company to keep its road in a reasonable state of repair and in a safe condition; nor is there any doubt of its duty to so operate it as to afford adequate facilities for the transaction of such business as may be offered it, or at least reasonably be expected. This is equally true with respect to passengers and freight. As to the extent or sufficiency of these facilities, including the number and frequency of trains, that is to be judged of and governed chiefly by the amount of business on the line of the road. The company, however, is given, as it should be, a very

large discretion in determining all questions relating to the equipment and operation of its road." Ohio & M. Ry. Co., v. People, 120 Ill. 200, 11 N. E. Rep. 347, 30 Am. & Eng. Ry. Cases 509.

"The road, once constructed, is, instanter, and by mere force of the grant and law, embodied in the governmental agencies of the state and dedicated to public use. All and singular its cars, engines, rights of way and property of every description, real, personal and mixed, are but a trust fund for the political power, like the functions of a public office. The judicial personage, the corporation, created by the sovereign power expressly for this sole purpose and for no other, is, in the most strict, technical and qualified sense, but its trustee. This is the primary and sole legal, political motive for its creation. The incidental interest and profits of individuals are accidents, both in theory and practice. Every farthing of its toils is first to be devoted to paying the public tax, and to the continuance of the road, its ample equipment and regular operation as the interests of the community, not those of the shareholders, demand. No matter that a dividend is never paid, that the private investment is sunk and worthless, that the interest upon its bonds is not met, and that all its creditors go unpaid, every dollar of its earnings must nevertheless be applied to keep up its maximum efficiency, as required by the political power in the law which created it. The neglect of the smallest of these duties in which the community is interested will be enforced by the public writ of mandamus." Talcott v. Township of Pine Grove, 1 Flippin, 120, text 144.

The writ of mandamus may be granted to enforce the performance of a duty to the public imposed by law upon

43—S C

a common carrier railroad corporation whether such duty be prescribed by statute or charter in express terms or is raised by implication of law from the nature of the public duty authorized by law to be performed and which is being performed by such corporation. See People *ex rel.* Walker v. Louisville & N. R. Co., 120 Ill. 48, 10 N. E. Rep. 657; People v. N. Y. C. & H. R. R. R. Co., 28 Hun. 543; State v. Hartford & N. Haven R. R. Co., 29 Conn. 538; State v. San Antonio St. Ry. Co., 10 Tex. Civ. App. 12, 30 S. W. Rep. 266; State *ex rel.* Grinsfelder v. Spokane St. Ry. Co., 19 Wash. 518, 53 Pac. Rep. 719, 41 L. R. A. 515; State v. Republican Valley R. Co., 17 Neb. 647, 24 N. W. Rep. 329; Haines v. People, 19 Ill. App. 354; Tapping on Mandamus, 11; 23 Am. & Eng. Ency. Law (2nd ed.)  See, also, cases cited 37 Am. St. Rep. 318; 2 Bailey on Jurisdiction, section 803.

The service rendered by a common carrier directly and vitally affects the public.  To have such service properly rendered is a beneficial right which the public are entitled to enjoy.  If the service is not properly rendered it causes loss and inconvenience to the public and perhaps endangers the lives and property of all those to whom it is extended; therefore, it is a fundamental duty of the state to rigidly require a proper rendering of this useful public service.

In order to legally and properly render the service incumbent upon a public common carrier, it is essential that it shall have and exercise certain rights, powers, franchises and privileges not possessed by individuals, but which can be conferred upon it by law.  These rights, powers, franchises and privileges, when granted and accepted or exercised, by implication of law impose upon

the common carrier obligations and duties commensurate with the character and extent of the grants of power to it and the purposes for which they are made.

Common carrier railroad corporations are created by law, and among the rights, powers, franchises and privileges granted to them are, to exist as a corporate entity, and as such to make contracts and to render service to the public for compensation, with limted liability of its shareholders, to own and use property, to construct its lines and to operate them, to take private property for use in the public service it renders upon payment of just compensation therefor, to engage in the business of a public common carrier and to demand and receive reasonable compensation for the service rendered. Other rights and powers are often conferred by law, and in this case large and valuable donations of lands are alleged to have been made by the state to aid the defendant carrier in equipping itself for the purpose of procuring a suitable and sufficient service to the public. When a state confers or permits the exercise of these and other rights, powers, franchises and privileges, the law imposes upon the railroad corporation receiving or exercising them the duty of rendering to the public a service adequate to meet all reasonable requirements. In order to render to the public an adequate service such a corporation must provide and maintain safe and convenient roadbed, track, motive power, rolling stock, equipment, appliances, facilities, operation, control, direction and management adequate to meet the reasonable demands of the service it undertakes to render so as to best serve the reasonable requirements of the public. The duty is implied by law in conferring the franchises and privi-

leges or in permitting their use, whether the provisions of the grants be mandatory or merely permissive, and the acceptance or exercise of the rights carries with it the duty of properly rendering the public service undertaken by virtue of the rights conferred or permitted to be exercised.

There is also imposed by law upon a common carrier railroad company the duty to receive and transport in a reasonably prompt, safe and convenient manner, and without unjust discrimination, all passengers and freight properly offered to it for carriage.

When a corporation is clothed with the rights, powers and franchises of a common carrier it becomes in law subject to governmental regulation and supervision; and it assumes the burden of providing all proper means, appliances and facilities for rendering the public service that it has been assigned to do and that it has undertaken to do, and of maintaining and operating all the property devoted to such use, in a safe, convenient and efficient condition, adequate to meet all reasonable requirements of the public service.

Where a railroad corporation undertakes to render to the public the service of a common carrier it is in law primarily and essentially charged with the duty and burden of providing reasonably adequate and proper roadbed, track, motive power, equipment and facilities for the service required, and of maintaining and operating its property so as to render to the public without unjust discrimination a reasonably safe and adequate service. See state *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 377, text 411, 27 South Rep. 225; Munn v. Illinois, 94 U. S. 113; City of Bridgton v. Bridgton &

M. Traction Co., 62 N. J. L. 592, 43 Atl. Rep. 715. 45 L. R. A. 837; Branch v. Wilmington & Weldon Ry. Co., 77 N. C. 347; Chicago & Alton R. R. Co. v. People , 67 Ill. 11.

The power and duty of a state to require the property of a common carrier corporation devoted to the public service within its borders to be maintained in a reasonably safe and adequate condition, and to be properly operated for rendering the public service to which the property is devoted by its corporate owner, are inherent and reserved in the state for the necessary protection and benefit of the lives and property within its territory.

Whether or not the property devoted by a common carrier railroad corporation to the public service which it is authorized to perform is adequate, and is being operated in a reasonably safe and convenient manner for the proper rendering of such public service, may be determined by the courts when the question is duly presented by the state through its proper official representatives; and in determining the question, any legal method of ascertaining the material and essential facts may be adopted which is best suited to the case.

In determining whether or not the roadbed, track, rolling stock and other equipment of a common carrier railroad corporation is reasonably sufficient and is being maintained and operated in a reasonably safe and adequate condition, and is being managed for the proper rendering of the public service that the corporation has undertaken to perform, the conditions under which the service is being rendered, the character and extent of the service, its reasonable requirments, and the means, facilities and methods best suited to such service in common use will be considered by the court, together

with any other material and pertinent matters available.

While the management of a common carrier railroad corporation is entitled to exercise a reasonable and *bona fide* discretion in providing and operating the property used in the discharge of its duty to the public, yet such discretion must be confined to legal purposes and to the public good; and when the discretion is so exercised that it results in an abuse of the public service the corporation is permitted to render, by the needless jeopardy of life or property, because of the lack of adequate facilities, and because of the failure to keep its roadbed, track, rolling stock and other equipment in reasonably safe and adequate repair and condition, and by the constant and long continued failure to promptly, safely and adequately perform the duties of a common carrier as is alleged in this case, the courts may intervene by mandamus at the instance of the attorney general to enforce the rendering of the public service in a reasonably safe, prompt and adequate manner, when the allegations of the writ are sufficiently specific and there is no other adequate remedy afforded by law. See People *ex rel.* Hunt v. Chicago & A. R. Co., 130 Ill. 175, 22 E. Rep. 857; Railroad Commissioners v. Portland & O. C. R. R. Co., 63 Me. 269, S. C. 18 Am. Rep. 208.

The duty of providing a reasonably safe and sufficient roadbed, track, equipment and facilities and of maintaining and operating the property in a proper condition for rendering safe, prompt and adequate service, and of actually rendering to the public such service without unjust discrimination, being required for the public good and contemplated by law and imposed upon a common carrier railroad corporation in permitting the exer-

cise by it of the franchise and privileges of a common carrier, the performance of this duty may be enforced by mandamus in a proper case upon the relation of the attorney general where no other adequate remedy is provided by law.

The duty of the common carrier to the public here alleged, is to accept, receive, transport and deliver with reasonable safety and dispatch all freights properly offered to it, to furnish ample facilities for receiving, transporting and delivering freight, and to transport with reasonable safety and dispatch all passengers, and to provide reasonably safe and convenient facilities therefor. The breaches of this duty alleged are, that the respondent has since October 1st, 1905, failed, and is now, January, 1907, failing in the performance of its public duty over and along certain specified sections of its lines of railroad to perform the public trusts conferred upon it and accepted by it, to the wrong, injury and great inconvenience of the public, in that it has failed and is failing to supply and furnish flat and box cars in sufficient numbers to load the freights actually offered and being offered to it for transportation, although it has been repeatedly requested and urged to do so by divers persons owning and being interested in and having large quantities of freight to be transported over said lines, and such failure to supply and furnish such flat and box cars has resulted and is resulting in great pecuniary loss and damage to the owners of freight and property offered for transportation as aforesaid, and in great injury to the industries of the country and to the wrong and injury of the public generally; that it has failed and is failing to transport and carry with reasonable dispatch and

safety freights which have been received by it for trans-
portation over said lines of railroad after the same have
been actually received by respondent for transportation
over said lines of railroad and such failure has resulted
in great pecuniary loss and damage to the owners of the
freight and property so received for transportation and
in great injury to the industries of the country and to
the wrong and injury of the public generally; that it has
failed and is failing to deliver at the proper destination
and with reasonable dispatch and safety, freights which
have been received and accepted by it for transportation
over said lines, and to provide adequate and sufficient
terminals for forwarding and delivering such freights
to connecting lines of railroad and common carriers, and
by such failure respondent has been and is now evading
and shirking the duties it owes to the state and the general
public, is subjecting the public to great inconvenience
and annoyance, is injuring and destroying the industries
of the country and is defeating the purposes and objects
of its own creation; that it has carelessly and negligently
and in violation of its duty to the state and the public,
failed and is failing to keep its roadbed and track in good
repair and in fit and suitable condition for the proper
transportation of freight over its said lines of railroad
and the safe movement of its equipment thereon; that it
has allowed and is allowing its roadbed and track to run
down and become unfit and unsuitable for the proper
movement of its equipment thereon and the transportation
of freight thereover; that said track in its present con-
dition is a danger and a menace to the lives and limbs
of the passengers on said railroad; that said roadbed and
track contain heavy grades and great curvatures on the

main lines; that the rails are light and insufficient in size and weight, a large percentage of the crossties under said rails are rotten and wholly incapable of supporting the rails with the weight of an empty car theron; that at divers places along said lines and for great distances the iron spikes which are driven into the crossties to support the rails, can be lifted from the crossties with the naked hand; that many of the angle bars or plates on the main line and bolts used in same are broken, and that on account of the unsafe, dangerous and bad condition of the track as aforesaid numerous casualties have recently occurred upon said lines of railroad, resulting in the destruction of human life and great waste and damage to property; that it has carelessly and negligently and in violation of its duty to the state and the public failed and is failing to provide sufficient motive power for the proper handling of its cars and freights and passenger traffic over said lines of railroad; that it has failed and is failing to provide sufficient shop and round-house facilities for the proper overhauling and repairment of its cars and locomotive engines and other equipment used upon said lines of railroad; that it has negligently failed and is failing to employ a sufficient number of machinists and carpenters to keep the track and equipment in good repair and suitable and fit condition; that it retains in its service many employees and servants who are incapable and negligent of their duties, so that the yards at junctional and terminal points along the lines of railroad aforementioned have become and remain congested and the movement of cars containing freights received by it at other places for delivery within the state of Florida, and upon the lines of railroad mentioned, is greatly hin-

dered and delayed, and the business and industry of the country greatly injured and impaired; all of which failures and omissions on the part of said railroad company have resulted and are resulting in great confusion, inconveniences, hindrances, delays and injury to the public generally in the state of Florida.

The allegations of the alternative writ show that for more than a year the respondent railroad company has neglected its duty to the public in permitting its roadbed and track to be and remain in a most unreasonably bad and unsafe condition, by allowing the roadbed to run down and become unfit and unsuitable for railroad use, by allowing a large percentage of its crossties, that are rotten and wholly incapable of supporting the rails and empty cars and incapable of holding the iron spikes driven in them to keep the rails in place, to remain unreplaced by proper and suitable ties, by using rails that are light and insufficient in size and weight, and by allowing broken angle bars or plates and bolts used in connection with the rails to remain on the track, and that in consequence of such neglect of duty numerous casualties have recently occurred upon said lines of railroad resulting in the needless destruction of human life and great waste of property; that for the same period of time the respondent has failed and is now failing to provide sufficient motive power and flat and box cars and other facilities for the handling of freight actually offered and being offered for transportation; and that the respondent has failed and is failing to transport and deliver with reasonable dispatch and safety freights which have been accepted by it for transportation, to the great injury of the public. These and other allegations of the alternative writ state

a most flagrant disregard and violation of the duty which the respondent owes to the public, by allowing its roadbed and track to most unreasonably become and remain in a condition palpably unsafe and unsuitable for the service the respondent has undertaken to render to the public, and by failing to furnish adequate motive power, cars and other facilities, and to transport and deliver with reasonable safety and dispatch freights accepted by it for transportation. Such gross neglect of duty is an abuse of the rights and privileges received from the state and exercised by the respondent in its undertaking by permission of the state to render the service of a common carrier, and the state has a clear right to correct such abuse and to enforce the performance of an adequate and proper service. While a discretion is allowed a common carrier corporation in the means and manner of the discharge of the duty it owes to the public, such discretion must be exercised in good faith and with reasonable regard for the requirements of the public service. When all the necessary facilities are furnished and operated so as to reasonably meet the just requirements of the public service the law in that regard is satisfied.

The mandate commands "the Atlantic Coast Line Railroad Company to forthwith repair and put in reasonably safe and suitable condition the roadbed and track over and along the lines of railroad" specifically designated, within the state of Florida, "to accommodate and transport with reasonable safety and dispatch the traffic offered and being offered * * * over and along said lines of railroad, * * * to furnish for use upon said lines of railroad flat and box cars in sufficient numbers to receive and load the freights now being offered * * * for trans-

portation, * * * to furnish locomotive engines in sufficient number, capacity and condition to transport and move the freight and passenger cars to be used along said railroad, * * * to receive, transport and deliver with reasonable safety and ·dispatch all freights offered for transportation along said lines of railroad proper to be carried by railroad corporations in this state and to deliver with reasonable dispatch the freight accepted by you for transpsortation over said lines of railroad."

The mandatory part of the writ of mandamus should conform to the allegations of the writ. In this case the writ mentions certain defects in the roadbed and track, and commands the respondent to repair and put in reasonably safe and suitable condition the roadbed and track over and along the lines of railroad designated, so as to accommodate and transport with reasonable safety and dispatch the traffic offered. This command is broader and more general than the allegation of the writ, in that it requires the roadbed and track to be put in a reasonable safe and suitable condition, which may include defects not alleged in the writ. The commands as to furnishing sufficient locomotive engines and flat and box cars, and as to transporting and delivering freights accepted for transportation, are general, and there are no allegations to aid the mandatory clause.

The duty alleged is one due to the public, and the breaches of it stated in the alternative writ, are peculiarly within the knowledge of the respondent. The manner of the performance of the duty is left to the proper discretion of the respondent, subject to the supervision the state is entitled to exercise.

The allegations of the alternative writ may be suffi-
ciently certain to enable the respondent to reply to them,
and the commands of the writ sufficiently definite to be
performed when the respondent has a discretion in such
performance; but the mandate of the writ, taken with its
allegations as to the breaches of duty, is not so definite
and specific as that its performance can be readily en-
forced by the court in this proceeding; and this is partic-
ularly so when differences are likely to arise as to the
manner of performance. As was said in the case of People
ex rel. Hunt v. Chicago & A. R. Co., 130 Ill. 175, "When it
is sought by mandamus to compel a railroad company to
do any act in relation to the equipment and operation of
the road, the courts, as a general rule, will not interfere
with its management of its railway in these respects, ex-
cept where the act sought to be enforced is specific." Peo-
ple ex rel. Cantrell v. St. Louis, A. & T. H. R. Co., 176 Ill.
512, 52 N. E. Rep. 292, 35 L. R. A. 556; Ohio & M. Ry. Co.
v. People, 120 Ill. 200, 11 N. E. Rep. 347, 30 Am. & Eng. R.
Cases 509.

If a railroad company which has undertaken the duty
of a common carrier wholly fails to perform its duty to
the public without sufficient excuse, it may by mandamus
be forced to perform it, when there is no other adequate
remedy provided by law. When a railroad company per-
mits its roadbed and track to become and remain so pal-
pably unfit for use in rendering the service of a common
carrier that it endangers the lives and property of the
public to whom the service is extended, and the law pro-
vides no other adequate remedy, the company may by
mandamus upon proper allegations be compelled to put
and keep its roadbed and track in a condition reasonably

sufficient to meet the requirements of the public service it engages to perform. The writ of mandamus may also be used to compel the furnishing of reasonably sufficient motive power and cars in proper cases, and to compel the reasonably prompt, safe and convenient transportation of freight and passengers in instances sufficiently specific for the application of the writ, when there is no other adequate remedy given by law.

The roadbed and track of a railroad have the elements of stability and fixedness, and it can be readily ascertained when they are put in condition required by specific allegations and commands. But in the nature of things there can be no fixed standard of the number of engines and cars that will be sufficient to move traffic along the several lines of railroad mentioned in the writ, as the requirements of the service may greatly and rapidly fluctuate from time to time. A large discretion in such cases must be left to the management of the road, and the supervision of the state tribunal specially charged with that duty.

Chapter 4700 of the laws of Florida, known as the railroad commission law, contains the following provisions: The railroad commission "shall have full power and authority to require any railroad, railroad company or common carrier to properly operate its railroad or transportation line and to furnish all the necessary facilities for the convenient and prompt handling, transportation and delivery of all freights offered along its line for transportation, and shall provide and prescribe all such rules and regulations as may be necessary to secure such operation and the furnishing of such facilities and the prompt handling, transportation and delivery of all freights offered.

* * * All the rules and regulations made and prescribed by said commissioners for the transportation of persons and property on the railroads subject to the provisions of this act, or to prevent unjust discrimination or other abuses by them, shall be deemed and held to be *prima facie* reasonable and just and are made *prima facie* evidence. * * * Said commissioners may at their discretion cause to be instituted in any court of competent jurisdiction in this state, by the attorney general, state attorney or special counsel, in the name of the state, proceedings by or for mandamus, injunction, mandatory injunction, prohibition or procedendo, against any such company or common carrier subject to the provisions of this act, or against any officer or officers, agent or agents thereof, to compel the observance of the provisions of this act, or any rule, rate or regulation of the commissioners made thereunder, or to compel the refunding of any moneys exacted in violation of any of the provisions of this act. And said commissioners are hereby given and granted full authority to do and perform any act or thing necessary to be done to effectually carry out and enforce the provisions and objects of this act."

Sections 6, 8 and 21, chapter 4700, acts of 1899; sections 2896, 2903 and 2921, General Statutes of 1906.

Under these statutory provisions there is a speedy and convenient remedy for any breach of the particular duties mentioned therein, in any individual or special case as it may arise. For any failure on the part of the railroad company to furnish reasonably sufficient and proper motive power, cars or other facilities, or to transport and deliver with reasonable safety and dispatch freights properly offered to or received by it for transportation, there

can upon complaint and notice in the individual case be prompt and authoritative ascertainments of the facts, and appropriate orders can be made thereon, by a state tribunal peculiarly adapted to such proceedings. The orders, rules and regulations made by such tribunal are *prima facie* reasonable and just, and they may, under the statute quoted, be speedily enforced by proper judicial proceedings in each individual case as it may arise.

As the statute above quoted affords a remedy which appears to be adequate to enforce the duty of the respondent as to furnishing sufficient motive power and cars and as to transporting freight, this court will not in this proceeding undertake at this time to enforce the mandate of the alternative writ as to furnishing engines and cars, and as to transporting and delivering freights. If made sufficiently definite the mandate as to repairing the road-bed and track may be enforced in this proceeding, as there does not appear to be another adequate remedy provided by law for failure to perform such duty.

The proceeding by mandamus can only be resorted to where there is no other adequate legal remedy to accomplish the purposes sought thereby. State *ex rel.* Proseus v. Craft, 17 Fla. 722; State *ex rel.* Burbridge v. Call, 41 Fla. 450, text 456, 26 South. Rep. 1016; State *ex rel.* Bradley. v. Cone, 40 Fla. 409, 25 South. Rep. 279; State *ex rel.* Sunday v. Richards, 50 Fla. 284, 39 South. Rep. 152. Where the court will not enforce the mandate of the alternative writ as it is framed, a peremptory writ will not issue thereon, since the writ must be enforced as a whole if at all. State *ex rel.* Bloxham v. Gibbs, 13 Fla. 55, text 75; State *ex rel.* Attorney General v. Atlantic Coast Line Ry. Co., 51 Fla. 578, 41 South. Rep. 529.

State ex rel. Ellis v. A. C. L. R. R. Co.—Syllabus.

An alternative writ may be amended. County Commissioners of Columbia County v. King, 13 Fla. 451, text 481.

An order will be entered that unless the attorney general shall within ten days amend the alternative writ so as to conform to the principles announced in this opinion the motion to quash the alternative writ will be granted.

SHACKLEFORD, C. J., and TAYLOR, COCKRELL, HOCKER and PARKHILL, JJ., concur.